## STATE v. HASTY.

1. QUASHING INDICTMENT.—It is not a ground for quashing an indict-
   ment charging murder with a pistol that solicitor omitted count charg-
   ing concealed weapons.
2. SESSIONS COURT FOR CHEROKEE.—A criminal case began during the
   week assigned for holding the Court of Sessions for Cherokee County
   may be continued and ended in the following week, assigned to trial
   of civil cases.
3. IMPEACHING WITNESS.—EVIDENCE tending to show immoral relations
   between deceased and witness for State in a murder case is irrelevant
   and inadmissible for the purpose of discrediting the witness.
4. CONTRADICTING WITNESS.—Defendant in murder case may be contra-
   dicted as to his declarations with reference to his actions the night
   preceding the homicide.

Before MEMMINGER, J., Cherokee, February, 1906. Affirmed.

Indictment against George Hasty for murder of Milan Bennett. Defendant appeals on following exceptions, alleging error:

"1. In not quashing the indictment herein, upon motion of defendant's attorneys, for the reason that it appears upon the face thereof that it charged the crime of murder and charged that the alleged crime was committed with a pistol, and therefore, it was necessary that said indictment should contain a special count charging the carrying of a concealed weapon; whereas, said indictment never contained any such count, and for that reason, was illegal and invalid and should have been quashed.

"2. In holding that it did not appear in the indictment herein that the crime was charged to have been committed with a weapon of the character specified in section 130 of the Criminal Code of 1902, and for that reason, need not contain such special count charging the carrying of a concealed weapon, it being respectfully submitted that the crime was charged to have been committed with a pistol, which is a weapon of the character specified in said section of the Code, and his Honor should have so held, and should have quashed the indictment.

"3. In not quashing the indictment for the reason that it was charged that the defendant had committed murder, and it was necessary that the indictment should contain such special count, regardless of whether it was charged to have been committed with a weapon of the character specified in section 130 of the Code, and his Honor erred in not so holding and in overruling the motion to quash.

"4. In overruling and refusing to grant defendant's motion in arrest of sentence and judgment, it being respectfully submitted that the verdict of the jury was illegal, null and void, and that his Honor was without jurisdiction to pronounce sentence and judgment; for the reasons that,

under the law, the Court of General Sessions, and the powers of the Court and of the jury incident thereto, expired with the end of the week beginning on the fourth Monday in February, 1906, and did not extend into the week subsequent thereto, and the said Judge had no power to so extend it, and hence any act of either Court or jury in said case, after the expiration of the time so limited by the law, was illegal, null and void, and his Honor should have so held and should have granted the motion.

"5. In not granting defendant's motion for a new trial upon the ground that there was no evidence that the defendant was at fault in bringing on the difficulty, and his Honor erred in charging the jury on said matter, and should for that reason have granted the motion.

"6. In not permitting defendant's attorney to ask questions, and defendant's witness, J. L. Ferguson, to give testimony tending to show the relations existing between the State's witnesses, Misses Sheridan and Bishop, with Bennett and Davidson, respectively, and tending to throw light upon the actions and motives of Bennett and Davidson with reference to the defendant, and tending to discredit and contradict said witnesses, it being respectfully submitted that said testimony was competent and relevant and should have been allowed.

"7. In not allowing defendant's witness, Mrs. Wing, to answer the following questions propounded to her by defendant's attorney: 'Q. In what condition did you find the bed? Q. What was the condition of the pillows? Q. Was there or not the impression of a human head on each of those pillows? Q. Following the bed down from the pillows, toward the foot, were there or not two distinct marks of a human form? (All above questions referring to Miss Sheridan's room and bed.) Q. Directing your attention to the room occupied by Miss Bishop, what was the condition of that bed? Q. What was the indication upon the pillows? Q. What did you find in the bed? Q. Was that a lady's hat?'

"It being respectfully submitted .that said questions were competent and relevant, tending to discredit and contradict the witnesses for the State, Misses Sheridan and Bishop, and tending to throw light upon the actions and motives of Bennett and Davidson with reference to their conduct toward defendant in the difficulty.

"8. In refusing to have defendant's witness, Mrs. Wing, sworn in the presence of the jury, and in forcing defendant's attorney to question her, without being sworn, and in ruling upon the question so propounded to her in the absence of the jury and without having her sworn, it being submitted that such conduct upon the part of his Honor was improper and illegal.

"9. In not allowing defendant's witness, Mrs. Sallie Hasty, to answer the following questions propounded to her by defendant's attorney: 'Q. Where did you see them (referring to Miss Sheridan and Mr. Bennett)? Q. Where were you when you saw them? Q. Where in the room did you see Miss Sheridan and Mr. Bennett, if you did see them?'

"It being submitted that said questions were competent and relevant, being in reply and tending to contradict and discredit the State's witness, Miss Sheridan, and tending to throw light upon the actions and motives of Bennett in his conduct towards defendant in connection with the difficulty, and should have been answered.

"10. In allowing the State's witness, John Spencer, to testify in answer to the following questions over defendant's objection: 'Q. Did you see on the morning of this homicide in your place of business, George Hasty, and did he say to you that he had been up all night trying to get something, using a vulgar word? A. Yes, sir. Q. And that he was going back to try it again? A. Yes, sir.'

"It being respectfully submitted that said questions were irrelevant and incompetent, and not in reply; and was upon an immaterial point and tended only to inflame the jury against the defendant.

"11. In charging the jury as follows: 'And if the defendant was in his own home, I charge you further that the defendant did not have to retreat in order to be in a position to set up self-defense, but he had a right to stand his ground and protect himself; but whether this be so or not, it was not necessary for defendant to retreat, if there was no probable means of escape at the time, or if by retreating the defendant would have put himself in greater danger,' and in adding thereto the following: 'That latter I charge you, with the qualification I have already given you in reference to a man being upon his own premises with an invited guest, or a person who had a right to be there.'

"The error being that in so charging, his Honor instructed the jury and lead them to believe and understand that it was necessary for defendant to retreat, even though there was no probable means of escape at the time, and even though by retreating the defendant would have put himself in greater danger, if the deceased was a guest of the defendant or at a public house or inn and had not been directed to depart therefrom.

"12. In charging the first request submitted by the attorneys for the State, which was as follows: 'The plea of self-defense is not made out, unless the defendant, by the preponderance of the evidence, shows that it was necessary for him to take the life of the deceased in order to protect his own life, or to protect his body from grievous bodily harm. If there was open to him a probable means of avoiding the killing, then the necessity did not exist.'

"The error being that it is not necessary for the defendant in such a case to show by the preponderance of the evidence that it was actually necessary for him to strike the fatal blow, but the law is that he is excusable whether it was necessary or not, provided he believed that it was necessary and the appearances were such as to justify such a belief in the mind of a person of ordinary reason and courage. It is further submitted that the necessity to kill might have existed even though there was open to him a probable means

of avoiding the killing, as, for instance, if by retreating, the defendant would have placed himself in greater danger of life or limb, which his Honor excluded from the jury. Again, his Honor took from the jury the right to decide whether, under all the circumstances of the case, the defendant was justified in killing, even though it subsequently transpired that there was a probable means of avoiding the killing, whereas such matters should have been left for the jury to determine.

"13. In charging the jury as follows: 'That in considering the plea of self-defense, you will consider that in connection with it, that a man is required only to use such force as is necessary under the circumstances which surround him, to repel force with force, that is the principle broadly and generally stated. The jury are to say whether more force was used than was necessary, from all the facts and circumstances as you have them before you.'

"The error being that in so charging, the jury was led to believe and understand that the plea of self-defense would not avail defendant, if it appeared that he used more force than was absolutely necessary to repel force with force, whereas, under the law, the plea of self-defense is available, no matter how much force the defendant used to repel force, and even though there was no absolute necessity to kill, provided defendant believed that the necessity existed, and provided the circumstances were such as to justify such belief in the mind of a reasonable man, and all this his Honor excluded from the jury by this charge.

"14. In charging the jury as follows: 'And when a person had any probable means of escape, he must avail himself of such means and retreat as long as he can do so, unless by so doing he may increase his danger.'

"The error being that it was not necessary for defendant to retreat unless he knew of a probable means of escape, nor if he believed the necessity to kill existed and the circumstances were such as to induce such belief in the mind of a

man of reasonable courage, and this should have been left to the jury.

"15. In charging the jury on the plea of self-defense, that in order for defendant to avail himself of such plea he must show that he was not at fault in bringing on the difficulty.

"The error being that there was no evidence that the defendant was at fault in bringing on the difficulty, and his Honor confused and misled the jury in so charging."

*Messrs. Johnstone & Cromer* and *Butler & Osborne,* for appellant. The latter cite: *Indictment must contain count against carrying concealed weapons, Crim. Code, 131:* 20 S. C., 393; 70 S. C., 384. *Court of General Sessions should not be extended into week assigned to civil cases:* Acts, 1905, 853; Con., art. V., sec. 18; 2 Hill, 683; Code, 1902, 27; 69 S. C., 325; 14 S. C., 350; 55 S. C., 596; 13 S. C., 3; 56 S. C., 180, 401.

*Solicitor T. S. Sease, Messrs. J. C. Jeffries, J. B. Bell* and *J. C. Otts,* contra. The Solicitor cites: *Not necessary for indictment to contain a count against carrying concealed weapons:* Crim. Code, 130, 131. *Sessions Court could be carried into second week:* Code, 1902, 27; 30 S. C., 391.

*Mr. Otts* cites: *Sessions Court may be extended into second week:* Acts of 1905, No. 366. *As to granting new trial:* 11 S. C., 195; 15 S. C., 407; 24 S. C., 593; 53 S. C., 215. *Witness cannot be impeached by proof of immoral acts:* 2 Mills Con. R., 173; 52 S. C., 534; 34 S. C., 38; 29 Ency., 797; 7 Ency., 173; 34 S. C., 16; 20 S. C., 341. *Nor on collateral issues:* 33 S. C., 592; 1 Stark. Ev., 134, 135; Phil. Ev., 230-1; 2 Bail., 127, 437; 7 Ency., 109; 99 Mass., 432; 39 Ind., 568; 55 S. C., 443; 10 Ency. P. & P., 294; 33 S. C., 592; 2 Peake, 232; 85 N. Y., 618.

*Mr. Jeffries* cites: *Court of Sessions may be extended into second week:* Code, 1902, 2927. *Witness should not*

*be contradicted on collateral issue:* 33 S. C., 129, 590; 40 S. C., 482.

February 13, 1907.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   The following statement is set out in the record:

"This was an indictment against George Hasty, defendant, appellant herein, under the charge of murder for the killing of Milan Bennett, at Gaffney, said county and State, on December 15, 1905.   On the fourth Monday in February, being February 26, 1906, the defendant was arraigned and pleaded 'not guilty' to the indictment.   On Thursday, March 1, 1906, the case being called for trial, and before the jury was impanelled or sworn, the defendant made a motion to quash the indictment, upon the grounds hereinafter contained, which motion his Honor overruled, having first allowed the defendant to withdraw his plea for the purpose of making said motion to quash.

"The cause then proceeded to trial on that day and continued from day to day thereafter, with the exception of Sunday, until Monday afternoon, March 5th, 1906, when the jury was charged by the Judge and sent to their room charged with the case.   On Tuesday morning, March the 6th, 1906, the jury returned a verdict of 'guilty, with recommommendation to mercy of the Court.'   Thereupon, defendant's attorneys made a motion for a new trial upon the minutes, which motion being overruled, said attorneys made a motion in arrest of judgment, upon the grounds that the verdict of the jury was null and void and the Court was without jurisdiction to pass final judgment and sentence upon the defendant, upon the grounds that the acts of 1905, prescribing the time for holding the Courts in the seventh circuit, limited the Court of General Sessions at Gaffney to one week, beginning on the fourth Monday in February, and ending the end of said week, and said week having expired and no verdict having been rendered during the

time prescribed by said act, but being rendered after the expiration of said time, it was null and void, and the Court had no power to pass sentence and judgment based thereon. This motion was overruled by his Honer, who sentenced the defendant to the pententiary at hard labor for the term of his natural life.

"Col. Geo. Johnstone, of counsel for the defendant, was unwell during the whole trial of the case, on account of which his Honor, the presiding Judge, indulged counsel for the defendant in every reasonable way, which indulgences resulted in delaying the completion of the trial, which trial would have been completed sooner but for such delays."

The defendant appealed upon exceptions which will be reported.

The 1st, 2d and 3d exceptions will be considered together. The vital question raised by these exceptions is, whether there was error on the part of his Honor, the presiding Judge, in refusing to quash the indictment, on the ground that it did not contain a special count, for carrying a pistol concealed about the person of the accused.

Section 130 of the Criminal Code provides that any person carrying a pistol concealed about his person shall be guilty of a misdemeanor, but that nothing therein contained shall be construed to apply to persons carrying concealed weapons upon their own premises.

Section 131 is as follows: "In every indictment for murder * * * there shall be a special count in said indictment for carrying concealed weapons, and the jury shall be required to find a verdict on such special count."

In the case of *State* v. *Norton*, 69 S. C., 454, 48 S. E., 464, the indictment contained two counts, one for murder and another for carrying concealed weapons. The defendants entered a plea of not guilty to said indictment. At the close of the testimony the Solicitor entered a *nol. pros.* as to the count for carrying concealed weapons. The jury found two of the defendants guilty, with recommendation to mercy.

8—76

They made a motion for a new trial and in arrest of judgment, on the ground "that the indictment did not contain a count for carrying concealed weapons, and the jury was not required to pass upon the issue, as provided in the Criminal Code." This Court said: "Each count in an indictment is considered, to all intents and purposes, a separate indictment. 10 Enc. Pl. & Pr., 540. The indictment was drawn in compliance with the requirements of the statute. The counts in the indictment were in no wise dependent upon each other. They charged distinct offenses, and when the Solicitor was satisfied that one of the counts was not sustained by the testimony, he had the right to enter a *nol. pros.* as to that count. His action, instead of being prejudicial, was advantageous to the appellants, and we fail to see wherein they have any just ground of complaint."

If the solicitor had the right in that case, to enter a *nol pros.* as to the count for carrying concealed weapons, when he was satisfied that it was not sustained by the testimony, he had a right, in the case under consideration, to omit the count for carrying concealed weapons, upon being satisfied, in the first instance, that it would not be sustained by the testimony, especially when it might well have been contended that the accused was on his own premises, at the time of the homicide.

These views practically dispose of all the questions presented by said exceptions.

In the fourth exception the appellant contends that the Court of General Sessions expired at midnight, on Saturday of the week beginning on the fourth Monday of February; that the verdict of the jury, rendered on the following Tuesday, was a nullity, and his Honor was without jurisdiction to impose the sentence.

The time fixed in the act of 1905 for holding the Court of General Sessions is as follows: "The Court of General Sessions at Gaffney, for the County of Cherokee, on the fourth Monday in February (one week), the fourth Monday in June (one week), and the fourth Monday in October (one

week) ; and the Court of Common Pleas, at the same place, on the first Monday in March (two weeks), &c."

This act contains the usual repealing clause that "all acts or parts of acts inconsistent herewith, are hereby repealed."

Section 27 of the Code is as follows: "Should the business before the Court of General Sessions at any term not be completed on the arrival of the day fixed by law for the holding of the Court of Common Pleas for said county, the Judge presiding may, in his discretion, adjourn said Court of Common Pleas until the Court of General Sessions shall have been concluded. But the provisions of this section shall not apply to the Courts held in the County of Newberry."

We are unable to discover wherein the act of 1905, and the foregoing section of the Code, are inconsistent.

We reach this conclusion more readily, for the reason that the law does not favor repeals by implication.

The appellant's attorneys have not argued the 5th exception, and we deem it only necessary to state that it cannot be sustained.

The 6th, 7th and 9th exceptions will be considered together.

The presiding Judge ruled that the testimony therein mentioned was irrelevant, and that it was not competent for the purpose of contradiction, as it related to a collateral question.

This Court is satisfied that the testimony was not only irrelevant, but that it was inadmissible for the purpose of discrediting the witnesses for the State therein mentioned. *State* v. *Alexander*, 2 Mill's Con. Rep., 173; *Sweet* v. *Gilmore*, 52 S. C., 530, 30 S. E., 395.

We proceed to consider the error assigned by the 8th exception. This exception seems to have been taken under a misconception, as we do not understand from the record that the presiding Judge refused to allow the witness to be sworn in the presence of the jury. But, in any event, the testimony was irrelevant, and it has not been shown that the ruling of the presiding Judge was prejudicial to the appellant.

The next question for consideration is that presented by the 10th exception. When the testimony set out in the exception was introduced, the defendant's attorney said: "We object, that is not any contradiction."

The record shows that while the defendant was under cross-examination, he was asked, if he did not make the statement to John Spencer set out in the exception, and he denied the same. The testimony was competent for the purpose of contradicting him.

None of the remaining exceptions were discussed by the appellant's attorneys, and we deem it only necessary to state that they cannot be sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.