## STATE v. JOHNSON.

1. JURY.—Objections based on irregularities in drawing jurors must be made before verdict, unless it is shown that party making them was injured by the irregularity.
2. EVIDENCE—LEADING QUESTION—EXPERT.—The question, "Have you in your personal experience ever witnessed the floating of any person or any bale of cotton down the main sluice of that river, and if so, did it follow the sluice or was it blown off to the Georgia side; and if you witnessed such an occurrence, was the wind blowing at the time or not?" is not leading; is relevant here because the action of the water there was in question; and competent in that it stated facts under the witness's observation.
3. IBID.—CUMULATIVE—DISCRETION—REPLY.—Admission of cumulative evidence in reply is within discretion of Circuit Judge.
4. IBID.—EXPERT.—Statement of physician based on examination of wound and personal knowledge of the water, is positive evidence.
5. CHARGE—FACTS.—Statement of Judge in his charge of facts agreed to by witnesses on both sides, is not error.
6. IBID.—IBID.—Under Con. 1868, statement by the Judge of the issues raised and evidence in support of them, is not a violation of the provisions of that Constitution.
7. IBID.—CIRCUMSTANTIAL.—Instruction that circumstantial evidence should be received and acted on as other evidence, is an instruction on the law of the case.
8. EVIDENCE.—EXPERT evidence admitted must be considered by the jury as other evidence, and given such weight as they think it should receive.

Before BENET, J., Edgefield, fall term, 1894.   Reversed.

Indictment against Tom Johnson for murder.   From verdict of guilty and sentence, defendant appeals on the following exceptions:

"1. Because his Honor, the presiding Judge, erred in not arresting the judgment and granting a new trial to the defendant when it appeared that the defendant was convicted by a jury not drawn according to law.   1. The sheriff was, contrary to law, allowed to draw the names of jurors from the jury box, and had in his possession the treasurer's key, and acted as jury commissioner as a substitute for the treasurer; thus acting in the capacity of jury commissioner and sheriff, who should be present simply as a witness.   2. The jury commissioners, contrary to law, passed upon the competency of the jurors and illegally destroyed the ballots containing the names of those jurors deemed incompetent, regardless of whether they were exempt by law or not; and his Honor ruled that the jury as drawn was a legal jury.

"2. Because his Honor erred in overruling defendant's objection and allowing T. Hitt to answer the following question propounded by the solicitor: 'Q. Have you seen anything much of Tom Johnson prior to the 21st of September of this year?'   Said question being irrelevant and incompetent.

"3. Because his Honor erred in overruling defendant's objection, and allowing John R. Blackwell to answer the following question propounded to him by the solicitor: 'Q. The day when the body was found, any white people there?' The effort of the solicitor being to show that the white people were more interested in connecting Robert Park's death with Tom Johnson than were the black people.

"4. Because his Honor erred in overruling defendant's objection, and allowing Dan Parks to answer 'yes' or 'no' to the following question, he having answered same on direct examination: 'Q. Tom Johnson testified that he didn't tell

you that your son told him it was twenty-five minutes after 4, and that he had a good silver watch on?'

"5. Because his Honor erred in overruling defendant's objection, and allowing John R. Blackwell to answer on redirect examination question propounded by solicitor: 'Q. What particular experience have you had in carrying anything on the water?'

"6. Because his Honor erred in overruling defendant's objection, and allowing L. G. Harmon to answer on his redirect examination question propounded by solicitor: 'Q. Have you in your personal experience ever witnessed the floating of any person or any bale of cotton down the main sluice of that river, and if so, did it follow the sluice, or was it blown off to the Georgia side, and if you witnessed such an occurrence, was the wind blowing at the time or not?' Because his Honor erred in overruling defendant's objection, and allowing L. G. Harmon to answer on the redirect examination, a question propounded by the solicitor, and to say, 'that he heard some one holler in the river and saw the men—was attracted by the hollering.'

"7. Because his Honor, the Circuit Judge, erred in permitting Dr. Bell to testify that it would be impossible for a body in water to have received such a wound as that appearing on the face of the deceased. Such evidence not being expert evidence, but the opinion of a witness giving his conclusion upon what were alleged to be the facts in the case on trial.

"8. Because the presiding Judge erred in defining manslaughter to the jury as follows: 'Manslaughter is the killing in sudden heat and passion upon sufficient legal provocation and without malice.' A definition of self-defense and not manslaughter, and that definition the Judge repeated in his charge.

"9. Because his Honor erred in charging the jury: 'The question for you in this case at the threshold of your examination is, was Robert Parks, the deceased, murdered, or did he come to his death by drowning, or by some other acci-

dent?' thus taking from the jury the right to say what questions were before them to consider and whether the homicide was manslaughter..

"10. Because his Honor erred in commenting on the facts, contrary to article IV. and sec. 26 of the Constitution of South Carolina, by stating to the jury: 'There is no doubt of its being dead, there is no doubt it was found dead at some point in the Savannah River. There seems to be no doubt that Robert Parks died from some cause or other, in the river.' These being facts for the jury to decide, free from the suggestions and opinion of the presiding Judge.

"11. Because his Honor erred in impressing on the jury his conclusions upon the facts and suggesting his opinion as follows: 'What are the marks? Are there marks upon the prominent parts of the body? Are there bruises upon those parts of the body that, as men of common sense, you would expect to come from contact with rocks, or where were the marks? If there is evidence that the worst bruise was breaking of the bone of the nose under the frontal bone, judging by the rules of common sense, you will ask was it possible for the drowning body of Robert Parks to have been thrown with such violence against a rock as to break the bone in that particular place, and yet have no marks upon the other parts of the person?'

"12. Because his Honor erred in stating his conclusions upon the evidence as follows: 'For you must decide, first of all, whether or not that bruise described as having broken the bones of the nose, and that mark or bruise over the face from the forehead down to the mouth, whether they were caused by the body being thrown against a rock, or was it a bruise showing the mark of a blow dealt by the hand of a murderer;' whereas, the jury should have had the untrammelled right to say whether there was such an injury as that described by witnesses as being on the face of Robert Parks.

"13. Because his Honor erred in suggesting to the jury his opinion on the evidence and making an argument against the defendant, as follows: 'The State introduces evidence

of what it alleges to be facts, from which it asks you to deduce the theory of guilt, and which the State alleges to be a reasonable theory. It says to you, we have proved the facts, and this fact, a number of facts, we ask you as reasonable jurors to say, can all these facts be true, and yet the prisoner be innocent?'

"14. Because his Honor erred in stating to the jury 'that circumstantial evidence is not deserving of such denunciation;' whereas, the jury should have been left without any suggestion from the presiding Judge as to the weight to be given circumstantial evidence.

"15. Because his Honor erred in indicating to the jury his opinions on the evidence, and what weight they should give to the evidence in this case, by that portion of his charge as follows: 'I wish to caution you, however, against imagining that because it is circumstantial evidence, you must not find the prisoner guilty of murder—that would be to ask you not to act like reasonable beings. If you were to carry that rule into common every day life, there would be very little you would do, or believe, in religion or morals, or public or private life. * * * It would never do, gentlemen, because some people have been buried alive when they were supposed to be dead, that we should not bury our dead when we believe them to be dead, nor would it do for a jury, if it believed a man to be guilty of murder, to acquit that man because some other jury may have convicted a man on circumstantial evidence, believing him to be guilty, and it was discovered afterwards that he was not guilty.'

"16. Because the presiding Judge erred in misstating the facts and commenting on them as follows: 'Now, the State's theory is, that Tom Johnson, getting in that bateau with Robert Parks to cross the Savannah River, did, at some point in the river not long after leaving the Carolina bank, strike such a blow upon the face of Robert Parks as to kill him, or make him unconscious, and then robbed him and threw him in the river; that his dead body was found three days afterwards, and upon the inquest such facts were devel-

oped as would justify the arrest of Tom Johnson, charging him with murder; and that he is now being tried by you, and to be found guilty by you, if you so believe.' No witness swore that Tom Johnson did, at some point in the river not long after leaving Carolina bank, strike such a blow upon the face of Robert Parks as to kill him or make him unconscious, and then robbed him and threw him in the river.

"17. Because his Honor erred in indicating to the jury his conclusions upon Dr. Bell's evidence, and charging contrary to the Constitution as follows: 'If Dr. Bell's testimony be taken as true on that point, is it a fact, that the wound must have been inflicted by some blunt instrument and not by rocks? Was it the butt of a gun or paddle, or any other blunt instrument in the hands of Tom Johnson?'

"18. Because his Honor, the presiding Judge, erred in charging and making the impression on the jury, that Tom Johnson would be guilty of murder, if he inflicted the blow on Robert Parks after death by the following charge: 'Was that wound inflicted before or after death? Of course, if you come to the conclusion that it was a blow dealt by Tom Johnson, with malice aforethought, you will not inquire whether it was before or after, if that blow was dealt by Tom Johnson.'

"19. Because his Honor erred in indicating to the jury what weight should be given to the evidence of the respective doctors that testified in the case, and stating to the jury that they might, or might not, consider the expert testimony, as follows: 'Now, I charge you that all the evidence, given by all the witnesses who testified to what relates to the case, the facts in the case, is binding upon you, to be considered by you—you are to weigh it; but as to the expert testimony given by Drs. Hill and Townes, and some given by Dr. Bell, when purely upon hypothetical questions and not upon the facts of this case, you may, or not, consider, just as you feel the need of it.'

"20. Because his Honor erred in expressing to the jury his opinion of the nature of the evidence rendered as follows:

'A great deal of the testimony of Dr. Bell was not the testimony of an expert, but that of an eyewitness.'

"21. Because his Honor erred in commenting upon the facts and misstating them to the jury, contrary to art. IV., sec. 26, of the Constitution of the State, by charging the jury as follows: 'The State says that when Bob Parks got in that bateau with Tom Johnson, he had a good silver watch, and when his body was found, the watch was gone and that only the broken chain was hanging there.' No witness swore that Robert Parks had a watch when he got into the bateau.

"22. Because his Honor erred in commenting upon the facts to the jury, contrary to the Constitution, by charging: 'If it be true that Tom Johnson called to Hitt, why did he call? Did he call to Hitt for help to help to save the drowning man, or did he call after the man was drowned? If he waited until after the man was drowned before he called out, you will ask why did he wait—was it because he was confused, excited, or was it because he was guilty of the death? If he called to Hitt after he was drowned, you will ask, is that the conduct of an innocent man, or is it the conduct of a guilty man, how is it to be explained?'

"23. Because his Honor erred in commenting on the facts, contrary to the Constitution, by charging the jury: 'You are to say whether it indicates innocence, or whether it was part of the plan of Tom Johnson to conceal his crime.'

"24. Because his Honor erred in impressing on the jury his conclusions upon the evidence by charging: 'There is no evidence whatsoever as to any one having seen him strike rocks.'

"25. Because his Honor erred in misstating the evidence to the jury by charging: 'You are to consider whether it is a fact or not, that he went several hundred yards up stream through rapid water, with the bateau.' There being no evidence that he did."

*Messrs. J. Wm. Thurmond* and *Croft & Tillman,* for appellant. The former cites: *As to error in drawing jury:* Rev.

Stat., 2389; 15 Rich., 42, 47; 15 S. C., 386; 2 N. & McC., 79. *Question set out in exception 4, error:* 2 Speer, 75. *Question in exception 6, error:* 1 Green., sec. 434; 2 Id., sec. 440; 3 Id., sec. 50. *As to exception 7:* 1 Green., sec. 440; 20 S. C., 452. *Manslaughter not properly defined:* 2 Chitty Black., 143; 1 Wheat. Crim. L. (9 ed.), sec. 304; 2 Hill, 619. *Charge violates Constitution of 1868:* 31 S. C., 281; 5 S. C., 69; 31 S. C., 238; 15 S. C., 392. *Error for Judge to let his opinion on facts reach the jury:* 15 S. C., 381; 21 S. C., 585; 28 S. C., 4, 572; 31 S. C., 281, 238.

*Mr. Assistant Attorney General Gunter,* contra.

April 8, 1903. The opinion of the Court was delivered by

MR. JUSTICE WOODS. Tom Johnson was convicted of the murder of Robert Parks, at the November term, 1894, of the Court of General Sessions for Edgefield County. Pending his appeal to this Court, he escaped and the appeal was suspended until his recent capture. From the record it appears that the dead body of Robert Parks was found in the Savannah River, with marks of violence on the face. Parks was last seen with the defendant going to the river to cross in a bateau, and the State endeavored to prove by circumstantial evidence that the defendant inflicted the violence which resulted in his death. The defendant testified that Parks accidentally fell from the bateau and was drowned, and offered evidence for the purpose of showing the wound was made by the rapid current of the river casting the body violently against a rock. This statement of the issue is necessary to an understanding of the questions involved in the appeal. The trial in the Court of General Sessions proceeded to its end without objection to the jury, but after a verdict of conviction, the defendant moved for a new trial on the following grounds:

"First. That the sheriff was, contrary to law, allowed to draw the names of jurors from the jury box.

"Second. That the jury commissioners, contrary to law, passed upon the competency of the jurors as drawn and illegally destroyed the ballots containing the names of those jurors by them deemed incompetent.

"Third. That it appears from the evidence that the offense, if committed at all, was beyond the jurisdiction of this State."

The motion was refused, and appellant in this Court insists it should have been granted on the first and second grounds. The act of 1871 (Revised Statutes, 1893, sec. 2407), requires objections of this kind to be made before the verdict, unless the party making them was injured by the irregularity. There was no effort in this case to prove injury resulting from the irregularity, nor was there evidence of effort to ascertain before trial whether the jury had been legally drawn. The statute proceeds on the principle that a party shall not be allowed to go to trial and take for himself the possibilities of a favorable result, and in case of disappointment have the verdict set aside upon a bare technical irregularity. *State* v. *Robertson,* 54 S. C., 153. The first exception is overruled.

The question asked by the solicitor of the witness, Hitt, as to whether he had seen much of defendant prior to September, 1894, was merely preliminary to inquiry as to what witness had seen of him in connection with the death of the deceased, and was clearly competent.

The witness, Blackwell, had testified to the presence and interest of the white people at the inquest, and defendant's counsel objected to the question, "The day when the body was found, any black people there?" While references to distinction of color, in courts of justice, may well be avoided, we do not see how the answer to this question could possibly have prejudiced the defendant.

The solicitor asked the question of the witness, Harmon, who was sworn in reply: "Have you in your personal experience ever witnessed the floating of any person or any bale of cotton down the main sluice of that river, and if so

did it follow the sluice, or was it blown off to the Georgia side, and if you witnessed such an occurrence, was the wind blowing at the time or not?" The appellant insists the question should have been ruled out because: (1) It was leading. (2) The witness was examined as a water expert, and question should have been put hypothetically. (3) It was irrelevant. (4) It was not in reply. The question was not suggestive of the reply, but left it to the witness to state his actual observation of the effect of the current and wind on a floating object at the place where the death occurred. It was manifestly relevant because the action of the current of the river at this point was one of the most important inquiries in the case. It was competent because the witness was stating facts he had observed in the action of the water. *Harmon* v. *R. R. Co.,* 32 S. C., 129, 10 S. E., 552. In general, the admission of cumulative evidence in reply is within the discretion of the Circuit Judge. *State* v. *Simms,* 16 S. C., 495 ; *Caldwell* v. *Wilson,* 2 Speer, 75.

Dr. Bell, who made the examination of the wounds of deceased, testified that they could not have been made by the face striking against rocks in the water after death, and that if the water was ten to fifteen feet deep, it was not reasonable to suppose they could have been made by deceased falling or being thrown from the boat and striking the rocks. All this, it will be observed, was based on his examination of the wound and his knowledge of the action of water, and it was clearly competent evidence. *State* v. *Merriman,* 34 S. C., 36, 13 S. E., 328. Besides, no objection was made to its admission. The second, third, fourth, fifth, sixth and seventh exceptions, relating to the admission of testimony, are, therefore, overruled.

The appellant in his ninth exception assigns error to the Circuit Judge in saying to the jury, "Then, gentlemen, the question for you in this case at the threshold of your examination is, was Robert Parks, the deceased, murdered, or did

he come to his death by drowning or some other accident?" thus, as appellant insists, taking from the jury the consideration of manslaughter. At the beginning of the charge, manslaughter had been merely spoken of and defined in general terms. The counsel for the defendant agreed, in response to an inquiry from the presiding Judge, that further discussion of manslaughter and self-defense was unnecessary. This left the presiding Judge under the impression that counsel had agreed there was no evidence upon any issue except murder and accidental death. If there was any error in this regard, however, or in the definition of manslaughter as "killing in sudden heat and passion upon sufficient legal provocation and without malice," it was corrected when the following instruction was given to the jury on the subject, which it requires no argument to show was very favorable to defendant: "Mr. Foreman, something has been said about manslaughter. If you come to the conclusion that Bob Parks came to his death at the hands of Tom Johnson, the deed having been done with a murderous intent, with malice aforethought, but in sudden heat and passion, upon sufficient legal provocation, then, of course, if you take that view of the testimony, you will find him guilty of manslaughter." The eighth and ninth exceptions cannot be sustained.

The tenth exception must fail, because the defendant himself had testified to the death of Robert Parks and that his dead body had been in the river. There was, therefore, no issue as to these matters, and the Circuit Judge had a right to make this statement as one upon which the witnesses agreed.

We do not think the portions of the charge referred to in the eleventh, twelfth, thirteenth, sixteenth, seventeenth, twentieth, twenty-first, twenty-second, twenty-third and twenty-fourth exceptions, were in violation of the provision of the Constitution of 1868, forbidding the Circuit Judge to charge the jury in respect to matters of fact, as that provision has been construed by this Court. The presiding Judge did make a very lucid statement of the

3—66

issues presented, and of the evidence upon which the State and the defendant relied to support their respective positions. But it is well established by authority that this is not a violation of the constitutional provisions. Among the many cases on the subject, we refer to *State* v. *White*, 15 S. C., 392; *State* v. *Glover*, 27 S. C., 607, 4 S. E., 564, and *State* v. *Atkinson*, 33 S. C., 101, 11 S. E., 693, as laying down the rule under which this case falls. In the case last cited, the evidence was collated and the issues stated more distinctly than in this case.

The charge on circumstantial evidence was a charge on the law of the case. It was nothing more than an instruction that circumstantial evidence was to be weighed as other evidence and acted on when it produced conviction, and that to refuse to act upon it when it did produce conviction, would be unreasonable. The jury was expressly told that circumstantial evidence to warrant conviction must be so strong as to exclude every other conclusion than the guilt of the accused. The fourteenth and fifteenth exceptions are overruled.

In the eighteenth exception, appellant's counsel submits the Court should interpret a portion of the charge as an instruction that if the blow was inflicted on the body of Parks by defendant after death, it would be murder. Since stress is laid on this point, we quote the portion of the charge referred to: "If Dr. Bell's testimony be taken as true on that point, it is a fact that the wound must have been inflicted by some blunt instrument and not by rocks; was it the butt of a gun, or paddle, or any other blunt instrument in the hands of Tom Johnson. · Was that wound inflicted before or after death? Of course, if you come to the conclusion that it was a blow dealt by Tom Johnson with malice aforethought, you will not inquire whether it was dealt before or after, if that blow was dealt by Tom Johnson; if you are satisfied that such was the case by the evidence before you, even though it may not have killed him at the time but stunned him, rendering him unable when thrown in the water to suc-

cessfully struggle for his life, being unconscious, then you will have to find him guilty of murder." Inaccuracies of language will occur, especially in oral charges, in spite of the utmost care, but it is manifest the jury, as reasonable men, could not have received from this language the impression that it would be murder to strike a dead body.

The twenty-fifth exception cannot be sustained. There was evidence from the witness, Hitt, that when he went to get his boat from deceased, who had borrowed it, he walked some distance up the river before he discovered defendant on the other side with the boat. The State took the position this evidence tended to show the defendant was not so maimed as the defense insisted he was, that he would not probably be able to strike his companion in the boat a fatal or stunning blow. The presiding Judge properly submitted this as an inquiry for the jury.

The nineteenth exception relates to the charge of the Circuit Judge on the consideration to be given by the jury to expert testimony. On this subject the presiding Judge said:

"In addition to circumstantial evidence, you have a good deal of expert testimony; that is to say, testimony by witnesses not as to facts in the case, but as to scientific theories and facts. Now, I charge you that all the evidence given by all the witnesses who testified to what relates to the case, the facts in the case, is binding upon you, to be considered by you—you are to weigh it; but as to the expert testimony given by Drs. Hill and Townes, and some given by Dr. Bell, when purely upon hypothetical questions and not upon the facts of this case, you may or not consider just as you feel the need of it. Expert witnesses are allowed to be examined not on the facts of the case, to throw light on the facts of the case, if the jury desire light thrown on the facts. If you have any difficulty as to the nature of the wound, whether it was a murderous blow or accidental bruise, then you may or may not call to your recollection what the doctors stated about such wounds—not about that

wound, but about such wounds. A great deal of the testimony of Dr. Bell was not the testimony of an expert, but that of an eye-witness, having seen the wound and examined it. So much of his testimony as is on the facts of the case, you must consider. I hope you understand, Mr. Foreman and gentlemen, what I mean. Purely expert, experimental, technical, theoretical testimony, may or may not be considered by you, just as you feel or do not feel the need of it." This clearly meant that the jury was at liberty to come to a conclusion as to the guilt or innocence of the accused, and find a verdict without giving any consideration to the expert testimony. The record shows the defense relied to a great extent on the expert testimony of Dr. Hill to support the statement of defendant that deceased was drowned. It was, therefore, of vital interest to him that the force of this evidence should not be impaired. He was entitled to have it considered by the jury just as other evidence. As the charge warranted the jury in finding a verdict on the direct evidence without giving any consideration to the expert evidence, it was clearly erroneous. After expert testimony is admitted by the Court, it is to be considered by the jury just as other evidence, and given such weight as in the opinion of the jury it should receive. *Thompson* v. *Ish.,* 99 Mo., 160; *Ry. Co.* v. *Whitehead,* 71 Miss., 451; *People* v. *Seaman,* 107 Mich., 348; *Isenhour* v. *State,* 157 Ind., 517; *R. R. Co.* v. *Thul.,* 32 Kans., 255.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and a new trial ordered.

*Submitted on printed Briefs.—R.*