6966

## LEOPARD v. LAURENS COTTON MILLS.

MASTER AND SERVANT.—It is duty of master to warn an inexperienced servant of dangerous machinery, and where the master undertakes to perform this duty through his foreman by directing him to keep the servant away from the dangerous machine and the foreman sends the servant, who, by special contract with his father, was not to be put to work at a dangerous machine, from the work he was assigned to, to work on a more dangerous machine, and he is injured by it, the master is liable.

Before GARY, J., Laurens, September term, 1907. Affirmed.

Action by H. V. Leopard, by guardian, against Laurens Cotton Mills. From judgment for plaintiff, defendant appeals.

*Messrs. Ferguson & Featherstone* and *Dial & Todd,* for appellant. *Messrs. Ferguson & Featherstone* cite: *Franks was a fellow-servant of plaintiff and defendant is not liable for his negligence here:* 71 S. C., 56; 72 S. C., 242; 168 U. S., 86; 149 U. S., 368; Woods on M. & S., secs. 438, 448; 64 N. Y., 5; 100 U. S., 213; 76 S. C., 452; 78 S. C., 381, 413; 12 Ency., 923, 949; 18 S. C., 270; 23 S. C., 528; 1 McM., 399. *Whether Franks was acting as representative of the master was for the Court:* 51 S. C., 296; 81 N. Y., 576. *Servant assumes dangers incident to the employment:* 71 S. C., 56; 12 Ency., 902.

*Messrs. W. C. Irby, Simpson, Cooper & Babb,* contra. No argument furnished Reporter.

July 22, 1908. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages alleged to have been sustained by the plaintiff through the negligence of the defendant.

The allegations of the complaint, material to the questions at issue, are as follows:

(1) "That on or about the twenty-eighth day of February, nineteen hundred and three, the plaintiff was in the employ of the defendant, engaged to work at a machine used in the defendant's said business of manufacturing cotton goods, and commonly known as string-pickers.

(2) "That on or about the time aforesaid the defendant, through its agents, and without the knowledge or consent of his father, directed and ordered the plaintiff to quit his work on the string-pickers, with which he was familiar, and ordered and directed that he unchoke a certain machine, commonly known as breakers, which is a dangerous machine, with the operation of which the defendant well knew the plaintiff was unfamiliar, and the defendant knowing the dangerous character of said machinery, and knowing the youth and inexperience of the plaintiff, negligently, carelessly and in reckless disregard of the plaintiff's rights, ordered and directed the plaintiff to do this work on said dangerous machine, without explaining the operation thereof, or its dangerous character, to the plaintiff.

(3) "That the breakers are more dangerous pieces of machinery than the string-pickers, for the reason that they cease to run when choked, and immediately begin to run when unchoked if not properly thrown out of gear before unchoking them, all of which was unknown to the plaintiff and was not explained to the plaintiff by the defendant, and while the plaintiff was engaged in unchoking said machine, as directed and ordered by the defendant, the said machine not having been thrown out of gear and the plaintiff not knowing that it was proper that this should be done, and not knowing how to do this, the said machine immediately began to run at a rapid rate of speed, catching the hand of the plaintiff in its mechanism."

The defendant denied the allegations of the complaint; alleged that the injury was the result of negligence on the

part of the plaintiff, and set up the defenses of assumption of risk and contributory negligence.

At the close of the plaintiff's testimony, the defendant made a motion for a nonsuit, on the ground that the plaintiff was injured through the negligence of a fellow-servant. The motion was refused. At the close of all the testimony the defendant requested his Honor, the presiding Judge, to direct a verdict on the ground just mentioned, but it was also refused. The plaintiff did not claim punitive damages.

The jury rendered a verdict in favor of the plaintiff for five thousand dollars. On motion, the presiding Judge granted a new trial, unless the plaintiff would remit fifteen hundred dollars of the verdict, which was done.

The defendant appealed upon numerous exceptions, which it will not be necessary to consider in detail, as in the language of the appellant's attorneys, "the issue is, did the defendant order the plaintiff to work upon a dangerous machine, known as breakers, without informing him of its dangerous character, and was the plaintiff injured in consequence of this order?"

The plaintiff testified as follows: "Q. Had you ever worked in a cotton mill prior to that time? A. No, sir; never had been inside of one. Q. What work were you first put to doing? A. Working in the drawing-in room. Q. How long did you work there? A. Some two weeks, I reckon, or little longer. Q. What kind of work were you doing there? A. They put me to running string-pickers next. Q. Is that in the same room? A. No, sir; it is in the room down below. Q. Who put you to work down there? A. Mr. Turner, John Turner. Q. What work was required of you? A. I was put there to run the string-picker. Q. When you were not doing that were you required to do anything else? A. Yes, sir; when I got caught up I had to help tend to the breakers; at least they required me to do it. Q. Did any one explain the operation of that machine to you? A. No, sir. Q. Had you ever seen one operate before you went to work in this mill?

2—81

A. No, sir; I had not been down there very long when I got my hand hurt. Q. State what occurred on that day in connection with your getting hurt, how you got hurt? A. Mr. Franks went off. Q. Who was he? A. He was sorter boss down there, the one that was doing the bossing. Q. In the room where you were working? A. Yes, sir; and left me and Smith Taylor to run the cotton up; told us when we got that run up to stop. I went back to take the cotton out of it and got my hand hurt. Q. Mr. Franks told you to do what? A. Tend to it and see to it until he got back. Q. What were you doing? A. I was unchoking it when I got my hand hurt. Q. Your job was on the string-pickers? A. Yes, that was what Mr. Turner put me there to run. Q. That was what you were employed for? A. Yes, sir. Q. And you left there and went over there to the breakers while this man was gone to dinner? A. No, he put me there before he left. Q. Why was it necessary to put you there if Mr. Smith Taylor was there, the man who was always in charge of the breakers? A. It is all the hands' work. Everybody that runs the string-pickers have to help tend to the breakers, if they got caught up—at least did when I got in the mill. Q. Everybody that attends to the string-pickers has got to look after the breakers, too? A. Yes, after they got caught up. At least they had me to, and every one else I seen running. Q. Had Mr. Franks ever sent you there before? A. Yes, I had been there several times. Q. At the instance of Mr. Franks? A. Yes, sir. Q. He had directed you to go there, leave your job on the string-picker and go to the breakers and work on Mr. Smith Taylor's job? A. I generally always got caught up every morning an hour before dinner time, and then wouldn't have anything to do until they brought the waste down again that evening. Q. You just went over, as matter of fact, you just went over to help Smith Taylor out, didn't you? A. Yes; they put me there to help tend to them. Q. Mr. Franks put you there to help tend to it? A. Yes, sir. Q. What help did Smith Taylor need? A. I couldn't tell you about

that.   I was ordered there to help.   Q. Tell us what Mr. Franks said to you when he left that room?   A. He just said go and help Smith Taylor run them, and tend to them until you get that pile of cotton run off, and then stop off for dinner.   Q. Told you to go and help Smith Tayor run the breakers?   A. Yes, sir, until we got that pile of cotton run up out of the floor."

W. J. Leopard, the father of the plaintiff, testified that he told Turner not to put his boy to work where there was any danger at all; that if he did, he would not let him work; and that Turner promised him that he would not put him to work anywhere except on drawing, where there was no danger at all.

W. E. Touchstone, a witness for the defendant, testified as follows: "Q. A short time before this accident, be kind enough to tell the Court and jury what transpired between you and that young man there?   A. I very often found him over among the pickers.   Q. Over among the pickers?   A. Yes, sir, we called them all pickers.   And he was over there that special day, and he had the door down under the machine right where this revolving cylinder runs.   I walked up to the boy and caught him by the sleeves and says, What you doing here?   Get over to that work.   Then I called Mr. Franks, and told him I wanted him to keep that boy away from those machines, if he could.   Q. And what did you say to Mr. Franks in his presence?   A. To keep that boy away from there.   Q. What did Mr. Franks say in his presence?   A. He said it was a hard matter to do it."

In their argument, the appellant's attorneys say: "The testimony shows that Mr. Touchstone was superintendent of the Laurens Cotton Mills in 1902, and that Mr. Turner was in charge of the department in which the plaintiff was injured.   These men represented the defendant, with power to employ, change and dismiss hands, as shown by the testimony."

There was an express agreement between W. J. Leopard, the father of the plaintiff, and John H. Turner, the repre-

sentative of the company, that the plaintiff would not be put to work in a dangerous place.

The plaintiff was an inexperienced youth of tender years, and it was the duty of the defendant to warn him as to dangerous machinery. John H. Turner, representing the master, undertook to discharge this duty by directing R. J. Franks, who was under his control, to keep the plaintiff away from the breakers.

In carrying out these directions, Franks was the representative of the master, and not a fellow-servant with the plaintiff, as the duty imposed upon him was non-delegable.

The plaintiff's testimony not only tends to show that Franks failed to carry out Turner's instructions, but that he actually ordered the boy to work at the breakers.

It is unnecessary to cite authorities to show that if the jury believed the plaintiff's testimony, the defendant was liable.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.