7260

SAWYER v. MARION COUNTY LUMBER CO.

1. MASTER AND SERVANT—NEGLIGENCE.—The testimony in this case being to the effect that the plaintiff was an inexperienced servant, that the machinery he was put to operate had hidden and unprotected dangers, and that the master failed to warn him of its dangers, the issues of negligence, contributory negligence and assumption of risks were properly referred to the jury. *Dicta.*

2. APPEAL—NEGLIGENCE—CONTRIBUTORY—ASSUMPTION OF RISKS.—The questions that there is no proof of negligence, that the proof shows contributory negligence and assumption of risks must be made by motion for nonsuit or to direct a verdict below before they will be considered by this Court.

Before DANTZLER, J., Marion, Fall term, 1908. Affirmed.

Action by C. W. Sawyer against Marion County Lumber Co. From judgment for plaintiff, defendant appeals.

*Messrs. Mordecai & Gadsden, Rutledge & Hagood* and *M. C. Woods,* for appellant, cite: *Injury was due to negligence of a fellow-servant:* 39 S. C., 571; 75 S. C., 487; 71 S. C., 53; 74 S. C., 419; 76 S. C., 539; 72 S. C., 264. *Risk was obvious:* 79 S. C., 502. *Plaintiff was guilty of con-*

*tributory negligence:* 46 S. C., 547; 34 S. C., 299; 72 S. C., 389.

*Messrs. Montgomery & Lide* and *W. F. Stackhouse,* contra, cite: *Injury was caused by negligence of master:* 39 S. C., 511; 81 S. C., 15; 64 S. E., 146; 71 S. C., 53; 1 McM., 385; Lab. M. & S., sec. 564a; 76 S. C., 452. *Plaintiff was not guilty of contributory negligence:* 79 S. C., 502; 76 S. C., 452.

July 22, 1909. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff through the wrongful acts of the defendant.

The allegations of the complaint, material to the questions under consideration, are as follows:

"That on or about the 24th day of November, 1906, the plaintiff was in the employment of defendant as an unskilled laborer at its lumber plant, in said State and county.

"That on the same day plaintiff was ordered and directed by the defendant to take charge of and operate a machine, known as a No. 5 moulder; that plaintiff had never been employed in the operation of this machine, and was wholly inexperienced in the use thereof; that the operation of said machine is dangerous, and requires skill and knowledge on the part of the workman, in order that it may be safely performed, even though said machine is provided with the proper safeguards; that defendant, wholly disregarding its duty to the plaintiff, negligently, carelessly, wilfully and wantonly ordered plaintiff to engage in said work, without informing him that said work was in any wise dangerous to an unskilled or inexperienced workman; that it was the duty of the defendant to provide safe and suitable machinery for plaintiff's use in his said employment, but that when the plaintiff was ordered by the defendant to take charge of and operate said machine, the defendant negligently, care-

lessly, wilfully and wantonly failed and neglected to pro-
vide any frame work, shield, cap, cover or guard for the
lower cylinder of said machine, although it was the duty
of the defendant to provide a frame work, shield, cap, cover
or guard for the lower cylinder of said machine, in order to
render it reasonably safe for its operation by the plaintiff.

"That while the plaintiff had charge of and was operat-
ing said machine his right hand was caught in the lower
cylinder of said machine, the same being in motion, and
was badly cut."

The defendant denied the allegations of the complaint,
and set up the defenses of assumption of risk and con-
tributory negligence.

His Honor, the presiding Judge, charged the jury that
there was no evidence of wilfulness.

The jury rendered a verdict in favor of the plaintiff for
$2,200.

The defendant made a motion for a new trial, on the
following grounds:

"That the whole of the evidence shows that the injury
sustained by the plaintiff was due to and caused by the
negligence of a fellow-servant of the plaintiff, for which
defendant was not liable.

"That the evidence showed that the injury sustained by
the plaintiff was due to and caused by his own negligence
contributing to the same, and as the proximate cause of
such injury, and that the defendant was not liable for the
same.

"That the evidence showed that the injury sustained by
the plaintiff was caused by a danger which was apparent
and obvious to the plaintiff, as an incident of his employ-
ment, which plaintiff voluntarily assumed, for which
defendant was not liable."

The motion was refused, and the defendant appealed.

The only assignments of error are, in refusing the motion
for a new trial, on the three grounds mentioned.

18—83

The first question that will be considered is, whether there was error in refusing the motion for a new trial on the ground that the injury was caused by the negligence of a fellow-servant.

If there was any testimony whatever tending to prove the allegations of negligence on the part of the defendant, even though every fact as to which the plaintiff's witnesses testified was contradicted by the witnesses for the defendant, nevertheless this exception could not be sustained.

We, therefore, turn to the evidence to see if there is any testimony tending to show negligence by the defendant.

The plaintiff testified as follows: "Q. What kind of work had you done prior to your employment by the Marion County Lumber Co. ?    A. I farmed.    Q. Did you ever have any experience in saw mill work?    A. No, sir, not any. Q. Did you ever work in a saw mill before you were employed by the Marion County Lumber Company?    A. No, sir.    Q. What kind of work did you do for the Marion County Lumber Co. ?    A. I took the lumber off the transfer table, and worked around the engine room.    Q. How long did you work for the Marion County Lumber Co. before the accident occurred?    A. About a month.    Q. Please state to the jury, as well as you can, what a No. 5 moulder is? A. It is the machine that they run the little small moulding that they put to the finishing part of a building—it runs finished lumber, little inch moulding.    Q. Please explain what kind of cylinder there was on that machine?    A. The machine had two cylinders, a top one and a rear one—the rear cyclinder is off to one end; it had no guide or cap over it whatever.    Q. How long had you been working at that machine before you were hurt?    A. I never had run that machine any.    Q. How long had you been working it before the accident took place?    A. About one-half hour. Q. You never operated that machine before?    A. No, sir. Q. Who told you to work at that machine?    A. Mr. Cartwright, the general manager of the planing mill.    Q. What

time of the day was that? A. I began to work the machine about 12 :30. Q. Now, Mr. Sawyer, you can state how you were hurt? A. I went to work with the machine at 12 :30. I ran it about thirty minutes, until it choked down. Q. What do you mean by choking down? A. The timber I was running through, the small timber, it broke in two, and consequently it would not feed, and so I looked around to see what was the trouble. I looked over the cylinder, and there was a stick on the other side of the cylinder, and I reached over to take the stick out of the way. As I reached to take the stick the draft, being real heavy, drew my hand into the cylinder. Q. What do you mean by the draft? A. They have a suction pipe attached to it, to take the shavings away from it. Q. Under the cylinder? A. Under the cylinder. Q. What did it do for you? A. It cut my hand off. Q. Did you ever work at the machine called the No. 3 moulder? A. I worked at it a day or two. Q. What was the difference between the No. 3 moulder and the No. 5 ? A. The No. 3 is absolutely covered, it is protected, both the bottom and the top cylinder. Q. How was it protected? A. The bottom cylinder is under the top cylinder, and a cap over them both. Q. A cap covers both cylinders? A. Yes, sir. Q. Was there any cap on the cylinder of the No. 5 ? A. No, sir. Q. Was there a cap on No. 3 ? A. Yes, sir. Q. There was none on No. 5 ? A. No, sir. Q. You stated Mr. Cartwright put you to work on that machine, did he give you any instructions about it? A. No, sir. Q. Did he warn you of any danger? A. No, sir."

This testimony is to the effect that the plaintiff was an inexperienced servant; that the machinery was dangerous and hidden; that the machine which the plaintiff was required by the defendant to operate on the day of the injury was different from the one which he had been operating; and that the defendant failed to warn him of the danger.

The duty of the master to an inexperienced servant is thus stated in *Leopard* v. *Cotton Mills,* 81 S. C., 15, 61 S. E., 1029: "The plaintiff was an inexperienced youth of tender years, and it was the duty of the defendant to warn him as to dangerous machinery. John H. Turner, representing the master, undertook to discharge this duty by directing R. J. Franks, who was under his control, to keep the plaintiff away from the breakers. In carrying out these directions Franks was the representative of the master, and not a fellow-servant with the plaintiff, as the duty imposed upon him was non-delegable. The plaintiff's testimony not only tends to show that Franks failed to carry out Turner's instructions, but that he actually ordered the boy to work at the breakers. It is unnecessary to cite authorities to show that if the jury believed the plaintiff's testimony the defendant was liable."

This exception is overruled.

The testimony hereinbefore set out also shows that the questions of contributory negligence and assumption of risk were properly submitted to the jury.

The judgment is affirmed.

MESSRS. CHIEF JUSTICE JONES *and* JUSTICES WOODS *and* HYDRICK *concur* in the result only as the questions raised by the exceptions should have been presented on Circuit by motion for nonsuit or to direct a verdict as required by Rule 77 of the Circuit Court.