13965

SMITH v. OLIVER MOTOR CO. *ET AL.*

(177 S. E., 791)

*Messrs. John W. Jennings* and *D. M. Winter,* for appellant,

*Messrs. T. P. Taylor* and *J. B. Murphy,* for respondent,

January 2, 1935.

The opinion of the Court was delivered by MR. C. J. RAMAGE, ACTING ASSOCIATE JUSTICE.

This is an action to recover damages against the respondents for the alleged conversion of an automobile belonging to the appellant. The facts are undisputed that on June 27, 1931, Smith purchased an automobile from the Oliver Motor Company, and to secure the balance of the purchase price thereof executed to said Oliver Motor Company a conditional sales contract, conditioned for the payment of $16.00 a month until the full indebtedness therein was paid. This contract was before maturity duly assigned to the C. I. T. Corporation, and, at the time of the sale of the automobile, plaintiff was in default in his payments.

The complaint alleges that, while plaintiff was negotiating with the defendants with the view of settling the total amount due under said contract, Smith sent the car to the Oliver Motor Company with the request that the same be held for two or three days until a final settlement could be made. The complaint further alleges that the respondents, without further notice, sold and disposed of said car, to plaintiff's damage in the sum of $5,210.15.

The answers of the defendants are very similar, and, after denying the material allegations of the complaint, alleged that the acts and doings of the defendants were in strict accordance with the terms and conditions of the conditional sales contract, hereinbefore referred to.

At the trial of the case, plaintiff offered evidence to prove that the defendants had agreed to hold the car in question for redemption by him within a few days, and a conversion was committed by the sale of the car within the five-day period. As stated in the answer, defendants denied any such agreement, and, by the cross-examination of plaintiff and witnesses produced in their behalf, offered evidence to prove that plaintiff had voluntarily surrendered the car and had impliedly and specifically waived the five-day provision in the mortgage.

At the close of the testimony, defendants moved for a directed verdict, which was overruled by the trial Judge, and the case submitted to the jury, which resulted in a verdict for the defendants. Thereafter plaintiff moved for a new trial on the minutes of the Court and also on the ground that the juror W. T. Coleman was improperly listed on the venire, and was also an agent of the defendant C. I. T. Corporation. No motion was made to put the jurors on their "voir dire," and, for the reasons stated in the order, the motion for a new trial was refused. From such order and "all rules, orders, proceedings, and actions of the Court, in and in connection with the trial of the above styled matter," an appeal was duly taken to this Court. We shall consider the appeal on its merits.

Each of the exceptions violates Section 6 of Rule 4 of this Court, in that it does not properly specify the error complained of and also embodies two or more questions of law and fact that this Court is asked to review. This rule has been thoroughly discussed in the cases of *Honour v. Southern Public Utilities Co.,* 110 S. C., 163, 96 S. E., 250; *State v. Cooper,* 118 S. C., 300, 110 S. E., 152; *Hayes v. McGill,* 116 S. C., 375, 108 S. E., 150, and *Adams v. Wilkes,* 118 S. C., 93, 109 S. E., 804, in all of which cases the appealing parties have been required to comply strictly therewith. Counsel for the appellant themselves admit that Exception 1 violates this rule, for in the last paragraph of

the statement contained in their argument we find the following: "It appears from the printed transcript that two (2) exceptions are embodied in the paragraph numbered 1, the first exception ending with the word 'violated' on line 5 of said paragraph, being folio 567, on page 144 of the transcript of record."

For the sake of convenience, we shall discuss the merits of Exception 1 by first considering that portion thereof which alleges error in refusing a new trial made upon the ground that the verdict was contrary to the evidence. This assignment of error cannot be sustained for the reason that no motion for a directed verdict was made by appellant. This Court has repeatedly held that this assignment cannot be considered, unless the appealing party raises the question in the lower Court by a motion for a nonsuit or directed verdict. *Entzminger v. Seaboard Air Line Railway*, 79 S. C., 151, 60 S. E., 441; *Sawyer v. Marion County Lumber Co.*, 83 S. C., 271, 65 S. E., 225; *Thomas Drug Store v. National Surety Co.*, 104 S. C., 190, 88 S. E., 442.

Also has it been repeatedly held that an appeal will not lie from an order refusing a motion for a new trial based upon a question of fact where there is any testimony to support the verdict. *Miller v. Atlantic Coast Line Railroad Company*, 95 S. C., 471, 79 S. E., 645; *Haynes v. Kay*, 111 S. C., 107, 96 S. E., 623; *Heyward Williams Co. v. Zeigler*, 109 S. C., 167, 96 S. E., 119; *Ingram v. Hines, Dir. Gen.*, 126 S. C., 509, 120 S. E., 493; *Harvey v. Railway Co.*, 133 S. C., 324, 130 S. E., 884; *King v. Western Union Telegraph Co.*, 167 S. C., 500, 166 S. E., 629. From a reading of the record, it will readily be seen that there was abundance of testimony to the effect that the five-day provision of the mortgage was waived. In fact, the cross-examination of the plaintiff was conducted almost entirely along this line, and practically all of defendants' witnesses testified to facts showing a waiver of said condi-

tion. Testimony of defendants' witness Gursh, to show such waiver, is quoted under Exception 3.

The second assignment of error contained in Exception 3 cannot be sustained for three reasons:

(1) Objection to the juror should have been taken before the trial commenced. This is required by Section 639, Vol. 1, of the Code of 1932.

(2) Appellant does not show that he has been prejudiced by the fact that the initials of Mr. Coleman were incorrectly listed on the venire. The affidavit of Mr. Coleman, presented to the Court on the argument for a new trial, states that the juror gave all parties interested a fair and impartial trial, and that there was no outside influence whatsoever which affected him in the determination of the verdict. In fact, the affidavit of John W. Jennings, one of the attorneys for the appellant, does not state that the improper listing of the juror in any way prejudiced appellant's case. There can be no question but that appellant must show his rights have been prejudiced by the improper listing. *State v. Stephens*, 11 S. C., 319.

(3) Appellant has not shown that he used due diligence to ascertain the improper listing of Mr. Coleman on the venire. *State v. Rafe*, 56 S. C., 379, 34 S. E., 660; *State v. Johnson*, 66 S. C., 23, 44 S. E., 58. It will be observed that the venire not only gave the name of the jurors, but also gave their addresses. Upon the drawing of the jury by the proper parties, their names are posted for several weeks before Court, and in each instance their addresses and sometimes their occupations are given. Mr. Coleman had lived in Columbia for years, been prominent in its affairs, and certainly with effort or diligence appellant could have easily known or ascertained that the initials were "T. W." and not "W. T."

In addition to the reasons stated above with reference to Exception 1, Exception 2 cannot be sustained for the reason that the evidence before the trial

Court conclusively showed that the juror T. W. Coleman was in no wise interested in, connected with, or employed by the C. I. T. Corporation. The affidavit of Mr. Jennings merely states that this juror was an agent or salesman for the Asbill Motor Company, and, although Mr. Jennings does state that Mr. Coleman was indirectly connected with, and acting for, the C. I. T. Corporation, he gives as his reason for such statement that Mr. Coleman worked for the Asbill Motor Company, which company merely financed some of its papers with the C. I. T. Corporation. Obviously, this did not make Coleman an agent of the C. I. T. Corporation, or in any way disqualify him to serve as a juror in this case. Further, the affidavit of H. W. Sandford states that the said juror was in no wise connected with, or employed by, the C. I. T. Corporation, and this affidavit was substantiated by an affidavit of the juror himself. The trial Judge passed upon the qualifications of Mr. Coleman to serve as a juror, and his findings of fact on this issue present no error of law. *Yarborough v. Columbia Railway, Gas & Electric Co.,* 100 S. C., 33, 84 S. E., 308; *State v. Haines,* 36 S. C., 504, 15 S. E., 555; *State v. Robertson,* 54 S. C., 147, 31 S. E., 868.

Exception 3 also embodies two questions of law and fact to be reviewed by this Court:

First, it alleges error in the Judge's charge to the jury to the effect that, if they found it was the intention of the plaintiff to deliver up the automobile and not pay anything further, they could find for the defendant, for the reason that there was no evidence to show such intention.

Secondly, that the charge was erroneous in that the Court failed to charge that there must be an agreement to surrender the car in payment of the debt and not merely an intention. As before stated, the whole case was tried on the theory that the plaintiff had surrendered the automobile in payment of the debt, with the positive statement that no further payments would be made thereon. The testimony

shows that Smith was considerably in arrears with the payments on the car, and that numerous calls had been made to his home by collectors for the C. I. T. Corporation. The testimony further shows that repeated demands had been made upon him for the possession of the car, and he had stated that, unless some adjustments were made, he would "turn the car in." We quote from the testimony of M. S. Gursh, collector for the C. I. T. Corporation:

"And I went to see him at his home the next time and asked him about his payment. And I could not get a collection. And he said he would not go see the Oliver Motor Company and wouldn't make any payments until they had made satisfactory adjustments.

"Q. Did he say what he was going to do? A. But he said, 'If they are not going to make adjustments, he was going to turn the car in.'

"Q. Did you see him again? A. I remember, I think, I saw him about three times.

"Q. Well, on this morning, September 24th of last year, did you go to his house? A. I went to his house, I think it was about 11 o'clock in the morning. I was told by a young chap at the door that Mr. Smith was in bed. And I think I told him that I would try to see him later. I think he went upstairs and said that I could see him. And Mr. Smith was in bed and seemed to be half asleep. And I asked him, 'Have you been down to see about that automobile?' An he said, 'I have turned my car back in. It is at the Oliver Motor Company.'

"Q. That is what he told you? A. Yes, sir."

In addition to all the facts and circumstances of the whole case and both evidence deduced on cross examination of the plaintiff and testimony of other witnesses for the defendants, we have the positive testimony of the witness just quoted that he contacted the plaintiff during the latter part of August with the view of collecting past-due payments, and that, at that time, plaintiff

stated that, "if the Oliver Motor Company are not going to make adjustments," he was going to turn the car in. We have the further testimony of this witness that on the 24th of September he called on Smith and was then informed by Smith that "I have turned my car back in. It is at the Oliver Motor Company." It is clear, therefore, that there was testimony that the plaintiff had surrendered his car to the Oliver Motor Company with the intention of making no further payments thereon, and so led the defendants to believe. Clearly, it was for the trial Court and jury to say whether or not by the use of such language plaintiff intended to, and did, waive said provision of the mortgage.

The second assignment of error in this exception cannot be sustained, for the reason that no request was made for any additional charge as to the agreement. Clearly, the jury, having heard the case throughout, understood that the trial Judge meant by the words used that there must be an agreement or waiver on the part of the plaintiff. It is also well settled that, in passing upon exceptions of this kind, the Court will consider the whole charge in connection with that part excepted to. It will be seen from the charge that the trial Judge read the pleadings almost in detail to the jury, and, while discussing the answer to the defendant C. I. T. Corporation, read therefrom as follows: "That on or about the 24th day of September, the plaintiff had failed to pay several installments then due upon said Conditional Sales Contract, and while, by reason of the said contract, this plaintiff was entitled to said automobile this defendant's agent called at plaintiff's home for the payment or possession to be given to the defendant, and that it was then told by the plaintiff that he had returned the said automobile to the Oliver Motor Company, and did not intend to make any further payments thereon."

The trial Judge, after charging the law fully as to the five-day provision of the mortgage, said, "That provision

of five days, however, would not apply if the plaintiff in this action voluntarily surrendered the automobile with the intention to balance his obligation or to pay the balance of the contract." The trial Judge added, "I instruct you gentlemen that if he surrendered it for a few (undoubtedly, the word 'days' is omitted by the stenographer) conditionally, then he did have a right within those few days to make payment and take the car." Obviously, the jury fully understood by the use of the word "voluntarily," and from the charge as a whole, that they must find that the defendant waived the quoted provision of the contract, and certainly the plaintiff could not have been prejudiced by the charge.

Further, we find the following at the close of the charge:

"The Court: Is there anything else?

"Mr. Winter: Nothing else, your Honor.

"Mr. Taylor: Nothing here, your Honor."

Having made no request for additional charge, especially when requested to do so, appellant cannot now be heard to complain. *Stewart v. Smith,* 138 S. C., 124, 135 S. E., 801; *Watson v. Sprott,* 134 S. C., 367, 133 S. E., 27; *Brogdon v. Railroad Company,* 141 S. C., 238, 139 S. E., 459.

The fourth exception, like all the others, embodies more than one proposition of law and fails to make a proper assignment of error; however, as stated with reference to Exception 3, no request for additional charge was made nor was a motion for directed verdict made, and, for these reasons, this exception cannot be sustained. Having failed to make such requests, as stated in the authorities above cited, the plaintiff cannot now complain.

It is the judgment of this Court that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER, CARTER, and BONHAM, and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON, concur.