6616

### KIRVEN v. VIRGINIA-CAROLINA CHEMICAL CO.

RES JUDICATA—FEDERAL QUESTION.—Where a question is raised in the United States Court as to whether either party to a suit has the right under the Constitution or Statutes of the United States to maintain the action, a Federal question is involved, and the question of *res judicata* of that judgment is determined upon principles settled by the United States Supreme Court. In that Court the rule is that a judgment is not *res judicata* of a second action upon a different cause of action unless the point or question has actually been litigated in the original action. *Held* in this case that a judgment in the United States Circuit Court on a note for fertilizers is not *res judicata* of an action in the State Court for damages to crops of defendant there caused by the use of that fertilizer, where the same question had once been raised in the United States Court by answer, but withdrawn by permission of the Court.

*Divided Court.*

Before KLUGH, J., Darlington, Fall Term, 1906. Affirmed.

Action by J. P. Kirven against Virginia-Carolina Chemical Co. From judgment for plaintiff, defendant appeals.

*Messrs. Wilcox & Wilcox, W. F. Dargan, Dargan & Coggeshall, Mitchell & Smith,* for appellants. Argument overlooked at proper time, but printed as an APPENDIX.

*Messrs. E. O. Woods, Geo. W. Brown,* and *Stevenson* and *Matheson,* contra.

*Mr. Woods* cites: *On question of res judicata:* 17 S. C., 42; 94 S. C., 351; 19 S. C., 150, 254; 44 S. C., 1; 49 S. C., 505; 1 Van Fleet on Former Adj., secs. 168, 171, 172; Black on Judg., 768; L. R. 6 Q. B., 687; 33 S. E. R., 292; 33 N. E. R., 491; 10 Gray, 231; 104 Mass., 326; 38 N. E. R., 976; 19 Ency. P. & P., 731, 733; 24 Ency., 785.

*Messrs. Stevenson* and *Matheson* cite: *On question of res judicata:* 17 S. C., 40; 94 U. S., 351; 52 S. C., 173; 1 Rich. L., 474; 41 S. C., 174; 34 S. C., 286.

August 5, 1907. The opinion of the Court was delivered by

Mr. Justice Gary. This is an action for damages, alleged to have been sustained by the plaintiff as the result of using certain fertilizers in the cultivation of his crops, manufactured and sold to him by the defendant.

As the main question herein is whether the issues raised by the pleadings had already been adjudicated in an action between the same parties, in the Circuit Court of the United States, it will be necessary to state briefly the proceedings in the two cases.

On the 15th of November, 1898, the Virginia-Carolina Chemical Co., as plaintiff, filed a complaint in the Court of Common Pleas for Darlington County, State of South Carolina, against J. P. Kirven, as defendant, in which it was alleged that on the 14th of March, 1898, the defendant made his certain note, whereby he promised to pay to the order of S. M. McCall $2,228.00 on the 25th of October thereafter; that the said note was indorsed for value to the plaintiff, and that no part thereof had been paid.

On the 30th November, 1898, his Honor Judge Watts, on motion of plaintiff's attorneys, granted an order that the cause be discontinued, without prejudice to the right of

the plaintiff to commence another action at such time as it might be advised.

On the 11th of April, 1903, the Virginia-Carolina Chemical Co. filed a complaint, in the United States Circuit Court, setting forth the facts mentioned in the first complaint.

On the 30th of May, 1903, the defendant, J. P. Kirven. served an answer to the complaint, in which he set up the following defenses:

*First.* That S. M. McCall was the owner of the fertilizers for which said note was given; that at the time the note was assigned to the plaintiff, and at the time of the commencement of said action, S. M. McCall and the defendant, J. P. Kirven, were residents and citizens of the State of South Carolina, and, therefore, that the Circuit Court of the United States was without jurisdiction.

*Second.* That the plaintiff was a foreign corporation, and could not maintain the action, for the reason that it had failed to comply with the requirements of the statute, relative to foreign corporations doing business in this State.

*Third.* "That the note sued upon in this action was given by the defendant to S. M. McCall for fertilizers, for which he agreed to pay a sound price, which is set forth in the note sued upon, and were purchased for the use of the defendant, himself and his tenants and customers in making a crop for the year in which the said note was given, but the said fertilizers were so unskillfully manipulated and manufactured and prepared, and were of such inferior quality, that instead of being of benefit to the crops of defendant and his tenants and customers, to whom he furnished the same, they were deleterious and destructive to the crops and destroyed the same in large part, and there was an entire failure of consideration to the defendant for said note."

On the 12th of April, 1904, his Honor W. H. Brawley, United States Judge, granted leave to the defendant, J. P.

496        KIRVEN *v.* CHEMICAL CO.

Kirven, to file such additional answer or counter-claim as he might be advised.

On the 6th of March, 1905, the defendant, J. P. Kirven, filed his answer, reciting that he "by leave of the Court first had and obtained files this his supplemental answer hereby, withdrawing any former answer heretofore filed by him herein."

The amended answer contained the first two defenses hereinbefore mentioned, and as a third defense by way of counter-claim alleged, that under attachment proceedings in North Carolina the plaintiff had in its possession the proceeds of 70 bales of cotton, amounting to $2,450.00, belonging to the defendant, J. P. Kirven, and for which he demanded judgment.

But the third defense, hereinbefore mentioned, *was withdrawn by leave of the Court,* and no reference was thereafter made in the pleadings to the defense of failure of consideration. Consequently, during the progress of the trial, when the defendant, J. P. Kirven commenced to testify about the crops, his Honor, the United States Judge, promptly ruled *that such testimony was not admissible, and excluded it.*

In that action the jury rendered a verdict in favor of the plaintiff for $911.07, and on the 4th of April, 1905, judgment was duly entered thereon.

On the 11th of October, 1906, a certified record of the said judgment was filed in the office of the clerk of the Court of Common Pleas for Darlington County.

On the 8th of February, 1904 (*before judgment was entered in the Circuit Court of the United States*), J. P. Kirven commenced the present action, in the Court of Common Pleas for Darlington County, against the Virginia-Carolina Chemical Co., alleging that said defendant caused damage to his crops in the sum of $1,995.00, by reason of selling to him acid phosphate and dissolved bone, which "had been manufactured with such gross negligence and want of skill, that, instead of being advantageous to the

crops to which they were applied, they destroyed the same in large part, and were not only worthless to the plaintiff, but by destroying his crops damaged.him very heavily."

The answer of the defendant to this complaint was practically a denial.

Subsequently, however, leave was granted for it to file a supplemental answer, whereupon it set up as a defense that the issues in this action were adjudicated, or could have been determined, in the action in the Circuit Court of the United States.

The jury rendered a verdict in favor of the plaintiff for $1,995.00.

In their argument the appellant's attorneys state that the main issue in the case, is whether the judgment rendered in the Circuit Court of the United States, on the note given for the fertilizers, and here alleged to have destroyed plaintiff's crop, did not adjudicate all issues between the same parties in this cause.

As a preliminary question, it will be necessary to determine what force and effect is to be accorded the judgment rendered in the Circuit Court of the United States.

When the Court derives its jurisdiction from the citizenship of the parties, and no question is raised in the case involving a right under the Constitution or Laws of the United States, then the judgment of the Court of the United States is only entitled in a State Court to the force and effect it would have had if it had been rendered in the State Court. But in all other cases, the Court of the United States will determine the question of *res judicata* upon principles settled by the Supreme Court of the United States. *Hancock Nat. Bank* v. *Farnum,* 176 U. S., 640; *Deposit Bank* v. *Frankfort,* 191 U. S., 499; *Gunter* v. *R. R.,* 200 U. S., 273.

In the case heard by the Circuit Court of the United States the question was presented under a statute of the United States, whether the assignee of the note had the right to maintain the action.

32—77

When the judgment was urged as a bar to the action in the State Court, a Federal question was presented, and must be determined in accordance with the decisions of the United States Supreme Court.

The appellant's attorneys in their argument say: "Speaking generally, it may be said that the decisions of these Courts establish that when the second suit involves the same claim as the first, the judgment in the first case is an absolute bar not only to the matters actually litigated, but as to every matter that might have been litigated; that if the second suit is upon an entirely different claim, the estoppel only extends to the matter decided," and cite the leading case of *Cromwell* v. *Sac County*, 94 U. S., 351, in which Mr. Justice Field, in behalf of the Court, thus states the principle:

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel, against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegations is as conclusive, so far as future proceedings at law are concerned, as though the defenses

never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law, upon any ground whatever.

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel, only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined, in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

The present action and that in the Circuit Court of the United States, it is true, were between the same parties, but upon a different claim or demand—one being upon a promissory note, and the other for unliquidated damages—arising from the destruction of plaintiff's crops, through the alleged gross negligence on the part of the defendant, in the manufacture of the fertilizers used upon said crops.

Therefore, plaintiff is not estopped from raising this question unless it was *actually* litigated and determined in that action. The record, however, shows that the claim upon which this action is based, was *withdrawn and not abandoned,* and that when J. P. Kirven offered to introduce testimony as to the crops his Honor, the presiding Judge, ruled that it was incompetent.

The first and second exceptions are overruled.

The third exception cannot be sustained, for the reason that when the charge is considered in its entirety it will be seen that it is not susceptible of the inferences which the appellant has drawn from it.

The fourth exception must be overruled, as the fact that in a number of instances in which the fertilizers were used, the crops were destroyed, afforded some evidence tending to show that the fertilizers were worthless and deleterious to the crops.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS *concurring.*  The question of *res judicata* is close and difficult, but I think the conclusions reached by Mr. Justice Gary is right on principle and authority.

The Virginia-Carolina Chemical Co., defendant in this action, sued the plaintiff, Kirven, in the Federal Court on notes aggregating $2,228, given for the purchase money of fertilizers.  Kirven set up, among other defenses, failure of consideration, in that the fertilizers were not only worthless but positively deleterious.  Subsequently, this defense was withdrawn, and on the trial of other issues the defendant recovered judgment for $1,723.40.

While the suit on these issues was pending in the Federal Court, Kirven commenced action against the Virginia-Carolina Chemical Company in the Court of Common Pleas for Darlington County to recover damages to his crop from the use of the fertilizer for which the notes were given; the essence of the complaint being contained in this paragraph: "That the said fertilizers, to wit, acid phosphate and dissolved bone, had been manufactured with such gross negligence and want of skill that, instead of being of advantage to the crops to which they were applied, they destroyed the same in large part, and were not only worthless to the plaintiff, but, by destroying his crops, damaged him very heavily, and by the injury which was inflicted on his crop

of cotton and corn, by fertilizers which were manufactured and sold for use upon them, he was damaged in the sum of $1,995 and costs."

The Virginia-Carolina Chemical Company answered by a general denial, but, after the determination of the suit on the notes, by supplemental answer, alleged that the claims set up by Kirven had been adjudicated in the action on the notes in the Federal Court. Having introduced the record in the Federal Court, on this ground the defendant requested the State Court to direct a verdict in its favor.

It is clear that Kirven's claim might have been set up as a counter-claim in the Federal Court; and the appellant first contends the Code of Procedure expressly requires all counter-claims to be set up in the answer. This position is thoroughly unsound.

Section 170, which is relied on, is "The answer of the defendant must contain: 1. A general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief. 2. A statement of any new matter constituting a defense or a counter-claim, in ordinary and concise language, without repetition." All that this means is that any paper purporting to be an answer must contain either a denial of a material allegation of the complaint or new matter constituting a defense or a counter-claim, or it will be no answer. It cannot in any view be considered a legislative enactment that any separate cause of action which might have been, but was not, used as a counter-claim, shall not be available in a separate action.

There are such enactments in the Codes of some States, but they are very different from section 170 of our Code. The Codes of California and Minnesota are examples. *Brosnau* v. *Kramer* (Cal.), 66 Pac., 979; *Lowry* v. *Hurd*, 7 Minn., 356. Mr. Pomeroy clearly lays down the rule that provisions for the counter-claim, such as are contained in our Code, do not preclude the defendant from bringing a

separate suit on a cause of action which might have been set up as a counter-claim. Pomeroy's Rem., 804. Counsel for appellant strongly argued, however, even if this is true, as a general rule, "this rule does not apply where the subject matter of the set-off or counter-claim was involved and adjudicated in the former action in such wise that the judgment therein necessarily negatives the facts on which the defendant would have to rely in order to establish his demand." This statement of an exception to the general rule, taken from 23 Cyc., 1202, may be accepted as true, yet I do not think this case falls under it. Had Kirven gone to trial on the plea of failure of consideration, saying nothing of his counter-claim for damages, and had lost on that issue, the judgment would have been conclusive that there was no failure of consideration, and hence obviously no basis for a separate action for damages for injury done by the fertilizer sold. The case in that condition would have been within the exception.

But he had his election to use the fact, if fact it be, of the worthlessness of the fertilizer as a defense by pleading failure of consideration; or, by separate suit, assert as a distinct cause of action the fertilizer to be positively deleterious, and claim damages for the injury which resulted from its use.

Inasmuch as he did not submit the issue of failure of consideration in the Federal Court, the judgment in that Court did not adjudicate that there was no defect in the goods or injury from their use. It only precluded Kirven from setting up defects as a defense ever thereafter, on the familiar rule that a defendant must set up all his defenses or lose the benefit of them. Therefore, as a defense, failure of consideration was gone.

But when Kirven elected not to use, as a defense, the fact of worthlessness, which might have been available in the action of the Virginia-Carolina Chemical Company against him, he was not precluded from using the very different

facts of deleteriousness and positive injury caused by appellant's alleged negligence in the manufacture of the fertilizer as the basis of an independent cause of action.

Having such a cause of action against the Virginia-Carolina Chemical Company, Kirven had a right to choose his own time and his own tribunal for asserting it, and could not be forced to assert it at the time and before the tribunal chosen by the company. This conclusion is, I think, in accord with the principles laid down in *Hart* v. *Bates,* 17 S. C., 40.

The reason for it is thus clearly stated in the lucid opinion of Judge Sanford, in *Brown* v. *Bank,* 132 Fed., 450, 452: "The reason for this rule is that the damages resulting from the plaintiff's wrongful act may be indeterminate, or may not have entirely accrued, when he brings his action, and it might be unjust or inequitable to permit him to determine the time when the defendant must present and prove his claim for the damages which he has suffered from the breach of the plaintiff's contract."

In *Cromwell* v. *Sac. County,* 94 U. S., 351, Justice Field uses this language: "But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points contraverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such maters is the judgment conclusive in another action." This language is quoted with approval in *Willoughby* v. *R. R. Co.,* 52 S. C., 174, 29 S. E., 629, where, however, the doctrine of *res judicata* was held to apply because the very questions made in the second suit had been actually litigated and decided in the first.

It has been repeatedly held that a judgment for the purchase price of goods does not preclude a separate action against the seller for breach of warranty, and the principle has been extended to other like cases, unless the purchaser had set up the breach as a defense or counter-claim. Black on Judgments, secs. 761-769; Van Fleet on Former Adjudication, secs. 168-170; 23 Cyc., 1202; Pomeroy's Rem., sec. 804; 24 Am. & Eng. Enc., 785; *Riley v. Hale* (Mass.), 33 N. E., 491; *Dewsnap et al. v. Davidson* (R. I.), 26 Atl., 902; *Jones v. Witousek et al.* (Iowa), 86 N. W., 59; *Upfalt v. Woreman et al.* (Neb.), 46 N. W., 419; *Kennedy v. Davisson* (W. Va.), 33 S. E., 291; *Van Epps v. Harrison* (N. Y.), 40 Am. Dec., 326, note; *Johnson v. Reeves* (Ga.), 37 S. E., 980; *Pub. Ass'n v. Fisher* (Mich.), 54 N. W., 759; *Green v. Bank, supra.*

Cases like *Ryan v. Association,* 50 S. C., 185, 27 S. E., 618, are not opposed to this conclusion. There Ryan sued to recover double the sum alleged to have been received by the defendant association for usurious interest. The charging of usurious interest was under the statute a defense to the action on the debt, but the penalty was recoverable as a counter-claim or in a separate action only for usurious interest actually *received.* Before any action was brought on the debt, usurious interest had been charged but not received. To this action, therefore, Ryan had a defense for usury but no counter-claim for a penalty. He did not set up the defense and therefore it was held, after judgment against him on the debt, the defense of usury was forever shut off, just as the defense of payment would have been.

It was held, further, that the excess of interest having been received, not on the contract but on the judgment into which the agreement had been merged, the penalty could not be recovered. But it was not held nor intimated that if usurious interest be received on a contract *before judgment,* the debtor could not bring a separate action for the penalty, though he had chosen not to set up the defense of usury against the suit on the contract. On the contrary.

the opinion was expressed that he could bring such an action without having set up the defense of usury.

It is difficult to understand how the failure of the crops on the land, where the fertilizer in question was used, could have been caused by negligence in its manufacture, but there was much evidence for the consideration of the jury on that point, and the judgment, therefore, cannot be reversed for an entire lack of testimony to sustain it.

MR. CHIEF JUSTICE POPE *dissenting*. Being unable to concur in the opinion of Mr. Justice Gary, I state briefly my views.

The Code of Civil Procedure of 1902, section 170, provides: "The answer of the defendant *must* contain: 1. A general or special denial * * * 2. A statement of any new matter constituting a defense or counter-claim, in ordinary and concise language, without repetition."

Section 171 provides: "The counter-claim mentioned in the last section must be one existing in favor of the defendant, against a plaintiff, between whom a several judgment might be had in the action, and arising out of the following causes of action: (1) A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action. (2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.

"The defendant may set forth by answer as many defenses and counter-claims as he may have, whether they be such as heretofore have been denominated legal or equitable, or both. They must each be separately stated, and refer to the causes of action which they are intended to answer, in such manner that they may be intelligibly distinguished."

For a proper understanding of the spirit which prompted these sections, it will be necessary to refer briefly to the state of procedure as it existed at the time of the adoption of the Code. It will be remembered that prior thereto.

tribunals for the trial of questions of law were separate and distinct from those which had to deal with equity issues. Likewise there were numerous forms in accordance with which it was necessary to bring the various classes of cases then existing. Consequently all procedure was fraught with much technicality. Choice of a wrong form or failure to distinguish between legal and equitable issues often proved fatal to causes of action. With the progress of the science, however, it was impossible that such a state of affairs could continue. Formality had to give place to materiality. The relief sought was embodied in the Code, which provided for the abolition of all distinction between suits in equity and actions at law, and the abolition of all common law forms, and the establishment of one form to be known as the civil action. It was intended that the new procedure should be highly remedial. Instead of having to split actions and bring law issues in law courts, and equity issues in equity courts, or law defenses in law courts and equity defenses in equity courts, there was to be but one action, in which all joined in interest must be made parties, and every question connected with the case was to be adjudicated. Litigation would be thus convenienced and multiplicity of suits prevented.

Proceeding to carry out this design, the framers of this legislation were met with cases in which, although it might be an advantage to litigants to pursue a certain course, yet there was no special advantage to be gained as a matter of public policy. Others occurred in which justice and public policy demanded certain methods of procedure. In providing for the former, permissive words were used, while in the latter cases, the language is mandatory. Attention is called to this for the purpose of emphasizing the word *must* in the act now under consideration. The legislature having used the term, this Court must take for granted that it was used advisedly and for the purpose of remedying some existing evil. It has no authority to hold that the term was used inadvertently. The act also pro-

vides that the defendant may set up as many defenses or counter-claims as he has, however inconsistent they are with each other. This is to give him the benefit of all his claims. Construing this clause with the whole act, the strong implication is, if he fail to set up any one of his defenses or counter-claims, he is, after judgment, precluded from again asserting what might have been his right. This is the only construction consistent with the mandatory injunction as to what the answer shall contain. Of course, it does not apply to defenses or claims not included in the statute. The law gives the defendant an opportunity, but does not attempt to compel him to take advantage of it; that is, it does not attempt to say that he shall set up all of his claims and defenses. Under our statute one action makes a finality. Pomeroy in his work on Remedies, section 804, says, in the absence of statutory provision it is not necessary to plead counter-claims in defense. Impliedly, however, where statute does require it, all claims and defenses must be set up.

Is the statute above quoted applicable to the case now under consideration? Section 171 provides, among other things, that counter-claims mentioned in the preceding section must exist in favor of the defendant against the plaintiff, and must arise out of the same transaction or be connected with the subject matter of the suit. This language, while to some extent indefinite, is sufficiently clear to remove all doubt from this case. It seems plain that the claim on which the action here is brought arose out of the transaction as to the fertilizer. But if this be doubted, certainly no one can doubt but that it is connected with the subject matter of the former suit. The fertilizer sold was productive of the alleged damages here sought to be recovered for. Therefore, it should have been set up as a defense. There are no cases exactly in point, but *McAliley* v. *Barber,* 4 S. C., 48, and *Rice* v. *Mahaffey,* 9 S. C., 282, to some extent support the position taken.

But, aside from the statutory provision, there is a strong

ground for holding that the plaintiff here cannot now maintain this action. The general rule will not be doubted that a direct final judgment of a Court of competent jurisdiction on the same subject matter, between the parties and privies in law or estate, is conclusive and cannot be reexamined in a subsequent action in the same or any other Court. *Manigault* v. *Deas,* Bailey's Eq., 293; *McDowell* v. *McDowell,* Bail. Eq., 326; *Davis* v. *Murphy,* 11 Rich. Eq., 560; *Hart* v. *Bates,* 17 S. C., 35.

The difficulty, however, arises in the application of the rule. What constitutes the same subject matter and what are the issues decided? The rule as laid down by Taylor on Evidence, vol. II, sec. 1513, that, "except in special cases, the plea of *res judicata* applies not only to points upon which the Court was actually required to form an opinion and pronounce judgment, but to every point which properly belonged to the litigation and which the parties, exercising reasonable diligence, might have brought forward at the time, is supported by much authority. 24 A. & E. Ency. of Law, 781; *Outram* v. *Morewood,* 3 East, 346; *Gould* v. *Ry.,* 91 U. S., 533; *Henderson* v. *Henderson,* 3 Hare, 115; *Stafford* v. *Clark,* 2 Bing., 382; *Miller* v. *Covert,* 1 Wend., 487; *Bagot* v. *Williams,* 3 B. & C., 241; *Roberts* v. *Heine,* 27 Ala., 678; *Dunham* v. *Bower,* 33 Am. Rep., 576; *Cromwell* v. *Sac. County,* 94 U. S., 351; *Dowell* v. *Applegate,* 152 U. S., 327, and numerous other United States cases. Equally well founded is the principle that a party cannot split up his defenses. *Beloit* v. *Morgan,* 7 Wallace, 619; *Henderson* v. *Henderson, supra; Gunter* v. *Ry.,* 200 U. S., 273.

Without passing on these questions, however, we proceed to the principle that seems conclusive of the case. Without conflict are the authorities in holding that where judgment goes against the defendant, and he afterwards sues the plaintiff on a cross claim, which he might have presented in the first suit but did not, if the facts which he must establish to authorize his recovery are inconsistent with the facts

on which the plaintiff recovered in the first action, or in direct opposition to them, the former judgment is a bar. Black on Judgments, sec. 676; 23 Cyc., 1202; *Ryan* v. *Association,* 50 S. C., 187, 27 S. E., 618; *Blair* v. *Bartlett,* 31 Am. Rep., 455; Bigelow on Estoppel (2d ed.), p. 36; *Krass* v. *Reichert,* 41 N. E., 835; *Dunham* v. *Bower, supra; Welling* v. *Association,* 116 Fed., 100; *Fayerweather* v. *Ritch,* 195 U. S., 301. This rule is founded on grounds of reason and public policy. · Without it the conclusiveness of judgments would become a will-o-the-wisp, a mere phantom existing in the imagination of minds. The second Court obtaining jurisdiction, if it sustains the claim of the plaintiff, would in effect reverse the decision of the former Court and make it a mere nullity in many cases. A state of facts found to exist by a jury of twelve men could be declared by twelve others not to exist. Never could a plaintiff, who recovered judgment in an action, feel assured that the defendant was not keeping back some counter-claim by which he meant to make his judgment of no effect. Courts of justice would be robbed of much of their justice dispensing power and great multiplicity of suits would result.

With this principle in view let us examine the facts of the present case. There can be no doubt that, although the former action in this case was brought upon a note, it was in fact for the recovery of the value of the fertilizer here alleged to have caused the damage. Plaintiff himself in the record admits this. What issue was decided then in that former case? Plaintiff there alleged that it had sold to the defendant fertilizer to the value of a certain sum. This defendant denied. The issue went to the jury, and they found for the plaintiff. Interpreting their verdict, they in effect say that plaintiff did sell the defendant fertilizers, that they were valuable to him to the amount claimed, and, therefore, defendant should pay plaintiff such amount. The defendant now brings this action, alleging damages arising from the deleterious quality of the fertilizers. This would have been a perfect defense to the

action above referred to if defendant could have proved it. He could even have claimed his damage and the jury, instead of finding that the fertilizers were of value to him, could have found that they did him damage, and could have given him a judgment against the plaintiff.

This case is identical in principle with the case of *Blair* v. *Bartlett, supra.* In that case plaintiff brought an action for malpractice. Prior to this action the defendant had brought an action against him in which he recovered the full amount claimed for his services. To this action he pleaded *res judicata.* The Court sustained this plea, saying that the former case had established the facts of the rendition of the services, and that they were valuable to the defendant since he was compelled to pay for them. But, if of value, they could not have been useless; and if of use, they could not have been harmful.

Identical are the facts found here. The former action settled, beyond all question, that plaintiff received the fertilizers and that they were of value to him. Applying the reasoning of the Court above, if they were of value they could not have been useless, and if of use they could not have been harmful. Value and harm are antipodal terms. They cannot coexist in the same material. The former action having found that the fertilizers were valuable, if the plaintiff is now allowed to recover in this action, he must necessarily impute error to the former finding of a Court of competent jurisdiction, a thing which, according to the authorities and as a matter of public policy, he will not be allowed to do.

For these reasons, I think, the judgment should be reversed.

MR. JUSTICE JONES. I concur in the view that there should be a reversal upon the ground last discussed in this opinion.

*Remittitur is held up to permit appellant to take this case to the United States Supreme Court.*