### STEWART v. SMITH

#### (135 S. E., 801)

I. SALES—IN ACTION FOR BREACH OF IMPLIED WARRANTY IN SALE OF PIANO, FAILURE TO PROVE ALLEGATION THAT PIANO WAS ONE WHICH DEFENDANT HAD DECLARED WORTHLESS DID NOT PRECLUDE RECOVERY. —In action for breach of implied warranty in sale of automatic

electric piano, plaintiff's failure to prove allegation on information and belief that piano was one declared to be worthless by defendant in another suit by manufacturer, *held*, not to preclude recovery.

2. SALES—SELLER'S REPOSSESSION OF PIANO SOLD HELD NOT TO PRECLUDE BUYER'S ACTION FOR BREACH OF IMPLIED WARRANTY.—Buyer *held* entitled to sue for breach of implied warranty in sale of automatic electric piano, nothwithstanding seller had repossessed it.

3. SALES—COMPLETE PAYMENT IS NOT CONDITION PRECEDENT TO ACTION FOR BREACH OF IMPLIED WARRANTY IN SALE OF PIANO.—Buyer may sue for breach of implied warranty in sale of automatic electric piano though complete payment has not been made.

4. SALES—RIGHT OF ACTION ON IMPLIED WARRANTY IN SALE OF PIANO HELD NOT WAIVED BY CONTINUED PAYMENTS AFTER NOTICE TO SELLER OF DEFECTS.—Buyer's continued payments on piano, after notice to seller that it was unsatisfactory and offer to rescind, *held* not waiver of right of action on implied warranty.

5. SALES—IN ACTION FOR BREACH OF IMPLIED WARRANTY, EXCLUSION OF QUESTIONS AFFECTING PLAINTIFF'S MORALITY HELD NOT ERROR.— In action on implied warranty in sale of automatic electric piano, exclusion of questions as to whether plaintiff had been put in guardhouse for keeping a bawdy house and as to whether she had been guilty of vagrancy *held* not error.

6. SALES—PURCHASER, DISCOVERING LATENT DEFECTS AFTER PART PAYMENT, IS NOT REQUIRED TO COMPLETE PERFORMANCE BEFORE DEMANDING RETURN OF PAYMENTS MADE.—Purchaser of automatic electric piano, discovering latent defects after part payment, *held* entitled to demand return of payments made without completing contract, or entitled to hold piano and recover damages for breach of warranty.

7. SALES—AFTER BREACH OF IMPLIED WARRANTY, SELLER OF PIANO HELD NOT ENTITLED TO REPOSSESS IT UNLESS DAMAGES TO WHICH BUYER WAS ENTITLED WERE LESS THAN BALANCE DUE.—After breach of implied warranty, seller of automatic electric piano *held* not entitled to repossess it unless damages to which buyer was entitled were less than balance due on purchase money.

8. APPEAL AND ERROR—RIGHT TO COMPLAIN OF INSTRUCTION HELD WAIVED BY FAILURE TO REQUEST ADDITIONAL INSTRUCTIONS.—Failure to request additional instructions *held* waiver of objections to instruction given.

9. SALES—ON BREACH OF IMPLIED WARRANTY, BUYER OF PIANO CAN HOLD IT AGAINST SELLER WHO HAS RETAINED TITLE UNTIL IT IS PUT IN CONDITION.—Buyer of piano on breach of implied warranty, after part payment, can hold it as against seller who has retained title until it is put in condition.

Before TOWNSEND, J., Kershaw, Summer Term, 1925. Affirmed.

Action by Alma Stewart against Arthur Smith, doing business as the Camden Furniture Company. Judgment for plaintiff, and defendant appeals.

Paragraph 7 of the complaint is as follows:

"(7) That on or about the 25th day of July, 1923, the Rudolph Wurlitzer Company of Cincinnati, Ohio, sued Arthur Smith, in business as the Camden Furniture Company, for $2,240.53. In the defendant's answer he admitted the debt, but alleged that during 1920 he had purchased from the Wurlitzer Company and paid for four automatic electrical musical instruments, which were defective and worthless, and asked that the price paid for said instruments be set off against the amount sued for. Said claim of the Camden Furniture Company's was set off against the $2,240.50 sued for by the Rudolph Wurlitzer Company, and the jury brought in a verdict for the defendant Arthur Smith, in business as the Camden Furniture Company, in said case. The electric piano which was purchased by the plaintiff in this case from Arthur Smith, in business as the Camden Furniture Company, is one of the four instruments, above referred to set out in the answer of the Camden Furniture Company, as defective and worthless, all of which this defendant is informed and believes."

The Judge's charge to the jury is as follows:

"The plaintiff in this action seeks to recover of the defendant $1,552.25, as damages for breach of an implied warranty in the sale of a mechanical piano described in the complaint. It is admitted that the defendant sold the piano to plaintiff at the price of $1,750, and that she paid $1,552.25 thereon. Because plaintiff did not pay the balance of the price promised, the defendant took back the piano under a mortgage for the purchase money and sold it at public auction for $75.

"The plaintiff claims that the piano in question was of defective material and workmanship, and was worthless and useless although she paid a full and fair price therefor, and for which the best kind of such instrument on the market could have been bought; that on discovering the defective condition of the piano she offered to rescind the trade, by returning the piano to plaintiff and asked the defendant to return the money she had paid thereon—

"Mr. De Loach: You mean defendant—instead of plaintiff—

"The Court: Yes, sir. By returning the piano to defendant and asked the defendant to return the money she had paid thereon, and defendant declined to do so, so she kept up the payments to the amount of $1,552.25 and she asks that she be now given a verdict against defendant for that amount.

"The defendant denies that the piano was defective, and says that, after crediting plaintiff with the $75 which the piano brought at the mortgage sale, plaintiff still owes defendant $352.95 on account of the trade, and he asks judgment against her for that amount.

"The burden is on the plaintiff to prove that the piano was defective, and that the defect was latent or concealed when plaintiff received the piano, and that, on discovering the defect, she acted promptly in offering to return the piano to defendant, and that defendant refused to take it back.

"An agent is one authorized by another called his principal to act for him. One dealing with an agent must inquire as to and ascertain what authority or power the agent has been given by his principal; and the principal is bound by the conduct or acts of his agent within the scope of his authority as agent. So notice to an agent is notice to the principal for whom he is then acting. In order for an

offer to an agent to affect the principal, the principal must have given the agent authority to act in the matter.

"Now, where a person sells an article of personal property at a full and fair price, he impliedly warrants that the article so sold is merchantable and reasonably suited for the use intended and that the seller knows of no latent defects therein. Latent defects means such defects as are hidden. An implied warranty does not cover defects which can be discovered by ordinary prudence and caution and as to these obvious defects, which could easily be discovered by the purchaser, teh buyer is held to exercise his own judgment and determine for himself whether or not the article is defective before he accepts it. Such implied warranty against hidden defects would continue until after the lapse of a reasonable time by which the buyer could by the exercise of ordinary care, prudence, and caution discover the true condition of the article in question, and no longer.

"The buyer has a reasonable time within which to inspect goods bought by him; but, if he knows of the defects, or accepts them without inspection after a reasonable time, he waives all objections to their condition. The buyer of goods would not be entitled to a rescission of a sale and to a return of his money paid for them unless he is able to, and does return or tenders or offers in good faith to return the goods to the seller in substantially the same condition as he received them, and this rule applies though a change in condition, damages, or injury to the goods was not the result of the buyer's negligence.

"If a purchaser accepts goods knowing them to be defective, he cannot thereafter obtain damages on account of such defects as were known, if any were known to him at the time he accepted them; and, if he afterwards discovers goods to be defective, upon making such discovery he must elect whether he will keep the goods notwithstanding such known defects and pay the agreed price for them, or return them to the seller and rescind the sale and get back

the purchase money, but, in order to get back his purchase money, or credit for such defective articles, the purchaser must act with reasonable promptness in returning, or offering to return, such defective goods to the seller. If he should fail to so act with reasonable promptness, it would amount to a waiver of his right to claim anything on account of such defects. Waiver is a voluntary relinquishment of a known right. It is for the jury to determine from the evidence whether the piano sold by the defendant to the plaintiff, and which the plaintiff claims was defective, was defective in either workmanship or material so as to amount to a breach of the implied warranty under which it was sold. If it was so defective, you would have to ascertain what difference there was in its value on account of such defects. Did they render it entirely worthless or only reduce its value? As stated, it is for you, the jury, to determine from the evidence whether the piano sold came up to the implied warranty, and, if not, whether or not the plaintiff waived such defects in the piano, or the right to make a claim against the defendant on account thereof. If she once waived such right, she could not afterwards assert it against the defendant.

"If you find that the goods were defective and there were damages growing out of such defects to the plaintiff, you would next have to consider whether or not the defendant waived such defects, either by accepting the piano, knowing it to be defective, or by failing to use reasonable and ordinary care in order to ascertain its condition and whether a reasonable time had elapsed for her to discover such defects before she made any offer to return the defective goods to the seller, if she offered to return it. If the purchaser never offered to return the defective piano to the seller, then she would have no right to claim that the seller was liable to her for any damages on account of the defects in such goods; and, if the plaintiff did offer to return the goods to the seller on the grounds that they were defective,

and they really were defective, it would be material for you to determine when she made such offer to return the goods. Was it within a reasonable time after she received the piano, and before a reasonable time had elapsed within which she should have discovered the condition of the piano? Because she would be bound under the law, in order to get credit for it on the grounds that it was defective, to return it to the seller before a reasonable time had elapsed to allow her an opportunity to discover the real condition of the goods and before, or immediately upon discovering their condition.

"A purchaser must act promptly in order to ascertain whether goods come up to the warranty under which they are sold—that is, with reasonable promptness—and, if she allows more than a reasonable time to elapse before using care to discover the condition of the goods, then, although if within a reasonable time after discovering the goods to the lapse of such reasonable time in which to discover their condition, she would have no right to return them; but, if within a reasonable time after discovering the goods to be defective, then she would be allowed to rescind the same, if she then acted with reasonable promptness in offering to return the goods to the seller on discovering them to be defective.

"Of course, if she accepted the piano, knowing it to be defective, she would have no right afterwards to return it on account of such defects or to recover any damages on account of such defects.

"If latent defects were discovered by plaintiff after she had made part payments on the piano, she would have a right to demand that they be returned to her before she gave up the piano; or to hold the piano, and to recover any damages occasioned by the breach of warranty, measuring the damages under the rule which I will give you in this charge.

"So it is a question—the question of fact makes it necessary for you to determine whether the piano mentioned in

the complaint came up to the implied warranty under which it was sold, and whether the plaintiff, as purchaser of such piano, knew of such defects, when she paid money for it and accepted it. If she did, then she would not be entitled to any credit on account of the defects of such goods. If she did not know of such defects, at the time she accepted the goods and paid for them, then, Did she use reasonable care and promptness in order to discover their condition?

"Did more than a reasonable time to allow her an opportunity to discover its condition elapse for her to discover it; if so, she cannot claim any damages for such defects, if more than a reasonable time had elapsed to allow her to discover it.

"If the piano was defective, and she discovered such defects within a reasonable time after she got the goods, then next inquire, Did she offer to return them with reasonable promptness? If so, then the plaintiff would have a right to receive credit for the value of such defective goods, or such damages as she sustained on account of the sale of such goods to her.

"If, however, she waived her right to reject the piano by accepting it, with knowledge of the alleged defects, she would not have a right to any credit on account of such defects or damages growing out of such defects.

"If the plaintiff is in default because she has not paid in full the purchase price promised for the piano, then she could not recover any damages on account of defects in the condition or quality of the piano, unless the amount of such damages should exceed the balance or unpaid portion of the purchase money; that is, the plaintiff must fully perform her part of the contract before she could demand any damages from the defendant.

"If the piano sold by defendant to plaintiff was defective, and there was a breach of an implied warranty as to its condition, material, and workmanship, which has not been waived by defendant, and she has been thereby damaged, the

measure of damages, if any are recoverable by plaintiff, would be the difference between the actual value of the piano, and what its value would have been if it had been as warranted—that is, the utmost limit of the amount recoverable by plaintiff in this action. And, if there was a balance of the $1,750 purchase money which plaintiff promised to pay for the piano still unpaid, then the amount of such balance and of such damages, if any, should be offset against each other and a verdict rendered in favor of the party to whom the difference, if any, between purchase money and damages, if proven, may be due. If an amount of damages was recoverable by plaintiff for defects in the piano which equaled the balance of purchase money due, and did not exceed such balance, the verdict should be simply for the defendant.

"The burden is on the plaintiff to prove the amount of credits on payments to which she may be entitled.

"The form of your verdict may be either, 'We find for plaintiff, so many dollars,' stating the amount, or, 'We find for the defendant, so many dollars,' stating the amount, or simply, 'We find for defendant,' according as you may view the evidence.

"Mr. De Loach: Your Honor again used the word 'defendant.'

"The Court: I mean the 'plaintiff.' The plaintiff claims she has been damaged by defects in the piano, but, if she knew of such defects and accept such piano, knowing it was defective, then that would be a waiver on account of any damages by reason of any defects, if she knew there were defects, and, knowing it, accepted it.

"Mr. De Loach: Your Honor, the defendant had a right to take the piano back under his mortgage.

"The Court: After the condition was broken, by failure of the plaintiff to pay the balance of the purchase money due, the defendant had a right to take back the piano, unless

the plaintiff was then entitled to recover more damages than would have settled the balance due on the purchase money.

"I have given you the forms of your verdict. Write whatever verdict you find on the back of this paper, here, marked 'Summons and Complaint.' "

Certain exceptions of appellant, referred to in the opinion, here follow:

"(9) For error in his Honor in sustaining the objection of plaintiff's attorney to the question, 'Didn't they indict you in Magistrate's Court and put you in the guardhouse for keeping a bawdy house?' Whereas his Honor should have admitted the question as relevant; it being on cross-examination of plaintiff.

"(10) For error in sustaining the objection of plaintiff's attorney to the question, 'Didn't you get put in the guardhouse and stay there awhile?' whereas his Honor should have admitted it as relevant; it being on cross-examination of plaintiff.

"(11) For error in not allowing the plaintiff to answer the question, 'And living in a house with a $1,500 electric piano and you are a vagrant—do you mean to tell this Court and jury that—now do you want to swear that?' whereas his Honor should have admitted it as relevant; it being on cross-examination of plaintiff.

"(12) For error in his Honor in charging the jury that, 'if latent defects were discovered by plaintiff after she made part payments on the piano, she would have a right to demand that they be returned to her before she gave up the piano, or to hold the piano, and recover any damages occasioned by the breach of warranty measuring the damages under the rule which I will give you in this charge.' The errors being that it was (a) necessary to make tender of the piano or rescind the contract where there was more to be done on her part; and (b) to complete the contract on her part before demanding a return of her money or damages.

"(13) For error in his Honor in charging the jury that, "if the plaintiff is in default because she has not paid in full the purchase price promised for the piano, then she could not recover any damages on account of defects in the condition or quality of the piano, unless the amount of such damages should exceed the balance or unpaid portion of the purchase money'; the error being that he should have charged that plaintiff was not entitled to any damages until she first completed her portion of the contract.

"(14) For error in his Honor in charging the jury that, 'if there was a balance of the $1,700 purchase money which plaintiff promised to pay for the piano still unpaid, then the amount of such damages, if any, should be set off against each other and a verdict rendered in favor of the party to whom the difference, if any, between purchase money and damages, if proven, may be due. If an amount of damages was recoverable by plaintiff for the defects in the piano which equaled the balance of purchase money due, and did not exceed such balance, the verdict should be simply for the defendant'; the error being that his Honor should have charged that plaintiff was not entitled to damages until she first complete the contract on her part.

"(15) For error in his Honor in charging the jury that, 'after condition was broken, by failure of the defendant to pay the balance of the purchase money due, the defendant had a right to take back the piano, unless the plaintiff was then entitled to recover more damages than would have settled the balance due on the purchase money'; the error being that his Honor should have charged that defendant had a right under any circumstances to take back the piano after condition of chattel mortgage broken."

*Messrs. DeLoach & DeLoach* and *M. L. Smith,* for appellant, cite: *Plaintiff can only recover on averments in his pleadings:* 21 R. C. L., 466 and 608. *Specific averments in pleading take precedence over general averments:* 21 R. C. L., 450. *Retention of article bought implies waiver of*

*defects:* 134 S. E., 415; 131 S. E., 623; 128 S. C., 443; 115 S. E., 815; 74 S. C., 576; 66 F., 483; 36 L. R. A. (N. S.), 473, note. *Legal title to chattel vests in mortgagee on condition broken:* 118 S. C., 206.

*Messrs. W. L. DePass, Jr., and R. H. Hilton,* for respondents, cite: *Recovery of damages for breach of warranty not affected by resale of chattel by buyer:* 131 S. E., 33; 121 S. E., 547; 87 S. E., 69; 66 So., 848. *Complete payment for chattel not prerequisite to recovery of damages for breach of warranty:* 87 S. E., 69; 58 S. E., 424; 33 S. C. L., 242; 16 S. C. L., 80. *Cross-examination as to previous character not in issue improper:* 56 S. E., 669; 19 S. W., 35. *Approval of relevancy of testimony largely discretionary with trial Court:* 115 S. E., 815. *Actions for rescission of contract of sale and for damages for breach of warranty distinguished:* 89 S. E., 653; 87 S. E., 69; 75 S. E., 366; 31 S. C. L., 49; 16 S. C. L., 80; 4 S. C. L., 304. *Failure to make more specific charge not error in absence of request:* 133 S. E., 27. *Under agreement buyer could hold piano until defects corrected:* 130 S. E., 137.

November 23, 1926.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE RAMAGE.

This action was begun on the 11th day of May, 1925, by the service of the summons and complaint based upon an alleged breach of implied warranty. The complaint alleged both express and implied warranties, but, upon motion of defendant's attorneys, plaintiff was required to elect upon which warranty she would proceed to trial. She elected the implied warranty. The answer was duly served, setting forth both a defense and a counterclaim, to which the plaintiff replied in due time. The cause came up for trial before his Honor, Judge W. H. Townsend and a jury, at the summer term of Court, 1925, and resulted in a verdict for the plaintiff in the sum of $400. During the course of the trial,

two motions were made by the counsel for the defense, one for a nonsuit and another for a directed verdict, both of which were refused.

Upon rendition of the verdict, a motion for a new trial was made by defendant which was denied by the Court, whereupon judgment was entered, and this appeal was taken.

Plaintiff contends that defendant, appellant, sold to the respondent an automatic electrical piano, in June, 1920, for which respondent agreed to pay $1,750, and executed a title retention agreement securing her notes, which she gave in payment of the purchase price. When the piano was delivered, it would not give satisfactory service; respondent made complaint to appellant, also to appellant's agent and collector. Appellant sent his repairman to work on the piano several times. He would assure respondent that the piano only needed adjusting. After keeping the piano two months, respondent offered to return the piano to Mr. Moore, appellant's repair man and collector. Before leaving Camden in March, 1921, respondent complained to appellant personally, and offered the piano to him, if he would return half the money she had paid on it. Appellant and his repair man and collector would assure respondent that the instrument would be adjusted. The piano was shipped to Greenville in 1921, and moved from there to Columbia in 1923. The piano was operated by putting a coin in the slot. Respondent made several attempts to place the piano at amusement places on a commission, but in each instance the piano would fail to operate satisfactorily. Respondent paid $1,552.25 on the piano; no payments were made after 1923; appellant repossessed the piano in December, 1924. The respondent had considerable dealings with the appellant prior to the purchase of the piano. The above mentioned action was begun five months after the piano was repossessed. The following questions are raised by the appeal:

1. Construction of the complaint: Does it contain a cause of action independently of the allegations in paragraph 7, which are stated on information and belief? The first question is raised by exceptions 1 and 2. The cause of action stated in the complaint was based upon the breach of the implied warranty in the sale of an automatic electrical piano, as is alleged in paragraphs 4 and 5 of the complaint. The allegations contained in paragraph 7 of the complaint, referred to in appellant's brief, as the basis of the said cause of action, are made upon information and belief; and the cause of action stated in the balance of the complaint is sufficient to go to the jury; there being testimony to support the allegations contained therein. If respondent offered no testimony to prove that this piano was one of those designated in paragraph 7 of her complaint, this would not preclude her from offering testimony that this particular piano, purchased by her from appellant, was defective and did not give service, as is alleged in the other paragraphs of her complaint.

2. Can an action be maintained for damages for the breach of an implied warranty after the buyer has parted with possession of chattel either by sale or repossession by the seller? The second question is raised by exceptions 2 and 3. At the time this suit was commenced, appellant had the piano in his possession. The fact that respondent did not have the piano in her possession at the time the suit was commenced does not preclude her from maintaining an action for damages for the breach of implied warranty; whether the buyer has sold chattels in the regular course of trade or exchanged them for others makes no difference, as a showing that the buyer has assumed payment is sufficient. 66 So., 848. If respondent were bringing this action for the rescission of the contract of sale, she would have waived her tender and offer to return the chattel, by selling same, for then it would be beyond her power to return the piano, if rescission were allowed and her pay-

ment on the purchase price returned. *Yancey v. Lumber Co.,* 133 S. C., 369; 131 S. E., 33. But this action is for damages for the breach of the implied warranty; the buyer has given her note in payment, and can set up damages for the breach of the implied warranty as a defense, if sued S. E., 547, that a buyer is not divested of his right of action for damages for the breach of the implied warranty in a separate action. *Rawls v. White,* 127 N. C., 17; 37 S. E., 68. It was held in *Mauldin v. Milford,* 127 S. C., 508; 121 S. E., 547, that a buyer is not divested of his right of action for breach of warranty of title, by a resale of the property. He has waived his right to rescission, but can bring action for damages for breach of implied warranty.

3, 4        3. (a) Is it necessary for purchaser to complete payment on contract of sale before commencing action for damages for breach of the implied warranty?

(b) Does buyer waive right of action on the implied warranty by continuing to make payments, after notifying seller that piano was "shot," and would not play satisfactory, and offering to rescind the contract, which seller refuses to do?

These two questions, raised by exceptions 4 and 7, can be taken together, as they present conflicting propositions of law. The case of *Williamson Heater Co. v. Paxville School District,* 102 S. C., 295; 87 S. E., 69, is directly in line with the case before the Court; the facts in that case are similar to those in the case at bar. The Court held that the Court could not have declared as a matter of law, that the failure of consideration had been waived; that the purchaser of the heating plant could pay a note for the purchase price and bring suit for breach of a guaranty of the plant, or set up such breach in an action on the notes. *Kirven v. Chemical Co.,* 77 S. C., 493; 58 S. E., 424, supports the latter holding in the above case. "Waiver is ordinarily a question for the jury, and we do not see that it has become a question of law," authorizing the Court "to declare as a matter of law that the defendants have waived the question

of" breach of the implied warranty. *Wiggins v. Hunter,* Harp. (16 S. C. L.), 80. Actions for the breach of warranty of the soundness of a horse, for the purchase money of which a negotiable note has been given. Held, that the action might be maintained, though the note had not been paid. *Parker v. Pringle,* 2 Strob. (33 S. C. L.), 242.

"In this State, an action may be brought for a breach of the warranty, without a tender or return of the article purchased; and the same rule applies when the breach of warranty is made a defense under our discount law." Cites *Carter v. Walker,* 2 Rich. (31 S. C. L.), 40.

4. Was the offer to return property made by buyer in a reasonable time? The fourth question is raised by exception 6. There is testimony that respondent offered to return the piano, and the question of the reasonableness of the time was for the jury. The testimony of the plaintiff, of L. L. Moore, of Wolfe and others, was sufficient to make this matter an issue for the jury, under the pleadings in this case.

5. There was sufficient evidence to support the submission of the issues to the jury and to sustain the verdict found. Exception 8 must be dismissed.

6. Was error committed by the presiding Judge in sustaining plaintiff's councel's objections to questions asked plaintiff on cross-examination, to wit, questions contained in appellant's exceptions Nos. 9, 10, and 11? The sixth question is raised by the above exceptions. *State v. Houx,* 109 Mo., 654; 19 S. W., 35; 32 Am. St. Rep., 686, holds that a witness cannot be cross-examined as to the immorality of his previous life, unless his answers tend directly to prove some issue. It has been held that a witness may be asked whether he has been arrested or indicted, but it would seem that such inquiries would be excluded, since the fact of indictment or arrest is not inconsistent with innocence. The trial Judge has broad discretionary power in approving relevancy of evidence as is held in *Southern Co.*

*v. Rice,* 122 S. C., 484; 115 S. E., 815. The case of *State v. Hasty,* 76 S. C., 105; 56 S. E., 669, holds questions similar to the above are not admissible.

7. Was error committed by his Honor in that part of his charge complained of in appellant's exceptions Nos. 12, 13, and 14, when taken with his charge in its entirety? The seventh question is raised as above stated. A consideration of the following South Carolina cases will sohw that his Honor's charge as excepted to in the above exceptions, is correct, and that the propositions insisted upon by appellant.in his exceptions are not the law in this State. The following cases differentiate between an action for rescission of a contract of sale and an action for damages for breach of the implied warranty of sale and state the rule in this State: *Ramsey v. Hill,* 92 146; 75 S. E., 366; *Greenwood Cotton Mills v. Tolbert,* 105 S. C., 273; 89 S. E., 653, Ann. Cas., 1917-C, 338; *Carter & Harden v. Walker,* 2 Rich. (31 S. C. L.), 40; *Williamson Heater Co. v. Paxville School District,* 102 S. C., 295; 87 S. E., 69, cites *Kirven v. Virginia-Carolina Chemical Co.,* 77 S. C., 493; 58 S. E., 424; *Wiggins v. Hunter,* Harp. (16 S. C. L.), 80; *Hurt v. Davis,* 1 Brev. (4 S. C. L.), 304. The charge of his Honor will be set out in full, and it states the law so well on the questions raised, and with such precision and clearness, that it may well be termed a model.

8. Was error committed by his Honor in that part of the charge complained of in appellant's exception No. 15? If so, is same not in response to the issue raised by the pleadings so as to be prejudicial? Has appellant's counsel waived right to complain of the Court's instruction after failure to request additional instructions in apt time? said instruction having been given upon following request of appellant's counsel: "Mr. De Loach: Your Honor, the defendant has a right to take the piano back under. his mortgage."

The eighth question is raised by exception 15. The ques-

tion of whether appellant had a right to repossess piano was not raised by the pleadings. The complaint states a cause of action for damages for breach of implied warranty in the sale of the piano; appellant's answer set up a counter-claim for $352.95, alleged balance due on the purchase price. The request to charge on page 25 of the case is not in response to the issues in the case. It is as follows:

"Mr. De Loach: Your Honor, the. defendant had a right to take the piano back under his mortgage.

"The Court: After the condition was broken, failure of the plaintiff to pay the balance of the purchase money due, the defendant had a right to take back the piano, unless the plaintiff was then entitled to recover more damages than would have settled the balance due on the purchase money."

Appellant's counsel waived right to complaint of the Court's instruction, after failure to request additional instructions in apt time. *Watson v. Sprott,* 134 S. C., 367; 133 S. E., 27.

Upon breach of implied warranty, buyer could hold piano against seller who had title retention agreement of sale until piano was put in condition. *Millenson v. Lamp,* 99 W. Va., 539; 130 S. E., 137. In this case the piano was in appellant's possession, and respondent was not asking for the return of piano; the instruction that the presiding Judge gave, at appellant's counsel's request taken with his charge, in its entirety, was the correct rule for the jury to be guided by.

We see no error in the trial; the pleadings, testimony, and charge of the Judge fairly submitted the question for the jury, and there was no error in the submission of the case, nor in a refusal to. set aside the verdict.

The judgment of this Court is that the judgment of the circuit Court be affirmed.

MESSRS. JUSTICES WATTS, BLEASE, and STABLER concur.

MR. JUSTICE COTHRAN (dissenting): The respondent states the case in part as follows:

"This action was begun on May 11, 1925, by the service of the summons and complaint, for damages on the alleged breach of an implied warranty. The appellant sold to respondent an automatic electrical piano in June, 1920, for which respondent agreed to pay $1,750.00, and executed a title-retention agreement securing her notes which she gave in payment of the purchase price."

For the purposes of this appeal the construction placed upon the complaint by the counsel for the plaintiff, as an action for damages on account of the breach of an implied warranty, will be adopted, although the complaint alleges no damages, and sounds much more like an action for the rescission of the contract of sale and the return of the money paid by the plaintiff on account thereof; it appears to have been so considered by the circuit Judge. The counsel for the defendant also, in his printed argument, follows the construction of the complaint made by the counsel for the plaintiff, which doubly justifies the Court in adopting that construction.

The complaint alleges, in substance, that on June 9, 1920, the plaintiff bought from the defendant an automatic electrical piano at the price of $1,750, paying $175 cash, $157.50 payable August 23, 1920, and the balance in ten notes of $141.75 each, payable in succeeding months, the deferred payments being secured by a title retention contract; that the piano was guaranteed by the defendant who agreed to return payments made by the plaintiff if it did not prove satisfactory; that the piano was worthless; that the plaintiff made various complaints of defects which the defendant attempted in vain to correct; that the plaintiff offered to return the piano and demanded the return of her money, all of which was refused; that she had been put to considerable expenses in having the piano repaired; that in December, 1924, the defendant "repossessed himself of said piano under his title retention contract of sale"; that the plaintiff has

paid upon the piano $1,552.25, which she demands in the prayer for judgment be returned to her.

The defendant in his answer admits the execution of the sale contract and that the plaintiff has paid upon it the amount alleged, but denies all other allegations of the complaint. He also sets up a counterclaim for $352.95; that being the balance due upon the unpaid notes with interest, less $75, proceeds of sale of the piano made by him after seizure under the contract. The plaintiff replied to the counterclaim and denied the same.

The case was tried before His Honor, Judge Townsend, and a jury at the summer term, 1925, resulting in a verdict in favor of the plaintiff for $400. The defendant has appealed.

The undisputed facts appear to be as follows:

On June 9, 1920, the defendant sold to the plaintiff an electrical automatic piano, at the price and upon the terms stated, taking from her a title retention agreement as security for the unpaid portion of the purchase price; the plaintiff made the cash payment required of $175, and the payment due August 23d of $157.50, leaving $1,417.50 unpaid, for which she gave ten notes of $141.75 each, payable in successive months, upon which she has paid from time to time, all but $325.23, as of May 30, 1925, as claimed by the defendant. She claims to have paid all but $197.75.

Soon after the delivery of the piano the plaintiff made complaint that it would not operate satisfactorily, and the defendant sent his man to repair it. She claims to have made complaints continually, and was assured that the defects could be remedied; she also claims that she offered to return the piano and recover back payments she had made; she, however, continued to pay the notes as they matured, at least six of them. She moved the piano to Greenville and rented it there to a bathing pool proprietor; she then moved it to Columbia and rented it there to various amusement places; she then sold it to the proprietor of Moore's

bathing pool for $275. Then in December, 1924, the defendant seized and sold it under his title retention contract for $75.

Upon the trial of the case, the defendant moved for a nonsuit and for a directed verdict, upon various grounds; both motions were refused. The only matter deemed necessary to consider is that the motion for a nonsuit should have been granted upon the ground that the title to the piano, having been reserved in the defendant by the title retention agreement, it became essential to the maintenance of an action upon the implied warranty that the notes remaining unpaid be paid, so that the title would thereby vest in the buyer; the law being that the buyer cannot maintain an action upon the implied warranty unless the title to the subject of the sale be vested in him.

There can be no doubt of the proposition that a title retention agreement, taken as security for the purchase price of a chattel, is, for all legal purposes, a chattel mortgage. *Talbott v. Sandifer*, 27 S. C., 624; 4 S. E., 152; *Perkins v. Bank*, 43 S. C., 39; 20 S. E., 759; *Hill v. Winnsboro Co.*, 112 S. C., 243; 99 S. E., 836; and nine South Carolina cases cited in opinion.

It is equally well established that, even before the note secured by a chattel mortgage becomes due, the title to the chattel is in the mortgagee, with usually the right of possession until maturity of the debt, vested by the mortgagee in the mortgagor. In *Hill v. Winnsboro Co.*, 112 S. C., 243; 99 S. E., 836, the Court said:

"As a general proposition, the execution of a mortgage vests the legal title to the property in the mortgagee; and likewise gives him the right to the possession of the property, unless there are circumstances indicating that such was not the intention of the parties."

This necessarily follows from the fact that, prior to the Act of 1797 (Code, § 5223), the title to all property, real and personal, was transferred to the mortgagee. Under that Act

the title to real estate remains in the mortgagor. Nothing is said about personal property; hence in the absence of a similar statute applying to personal property, the law as to it remains as theretofore. See innumerable cases cited in First and Second Decennial Digest, "Chattel Mortgages," Key No. 159.

If there should be any doubt as to this proposition, there can be none as to the proposition that upon condition broken both the right of possession and the title unite in the mortgagee. *Martin v. Jenkins,* 51 S. C., 42; 27 S. E., 947; *Rainwater v. Bank,* 108 S. C., 206; 93 S. E., 770; *Greene v. Washington,* 105 S. C., 137; 89 S. E., 649; *Bank v. Brigiman,* 106 S. C., 362; 91 S. E., 332; L. R. A., 1917 E. 925; *Dickerson v. Cleland,* 120 S. C., 221; 112. S. E., 920.

It is also true that, where the mortgagor sells the property covered by the mortgage, even his right of possession is gone.

"This right to the possession of the property until condition broken, is personal to the mortgagor, and may be forfeited by him, if he should sell the property or otherwise dispose of its possession." *Hill v. Winnsboro Co.,* 112 S. C., 243; 99 S. E., 836.

So that, in the case at bar, the plaintiff was divested of title by the title retention contract; In fact, she never has been vested with the title to the piano. She has lost the right to the possession of it both by selling the piano and by defaulting in the payment of the last notes. Both the right to the possession and the title having been lost, she cannot maintain an action upon the implied warranty, as title is essential to such an action. In *Bunday v. Columbus Co.,* 143 Mich., 10; 106 N. W., 397; 5 L. R. A. (N. S.), 475, quoting syllabus, it is held:

"The title does not pass at the time of installation, by a contract for the sale of machinery which stipulates that, until the price is paid, the title and ownership shall remain in the

vendor; so that before such payment the purchaser cannot maintain an action for breach of warranty of quality."

See Jones, Chat. Mortg. (2d Ed.), § 426.

"And payment of the purchase price is not a condition precedent to an action for damages, unless the sale is conditional and title does not pass until payment." 35 Cyc., 445.

"As the plaintiff never acquired title to the wagon, he can have no action for breach of warranty." *Stearns v. Drake,* 24 R. I., 272; 52 A., 1082; Benj. Sales (7th Ed), 962.

"An action for breach of warranty will not lie where the sale was conditional on payment of the full price due in installment and the last installment has not been paid." *English v. Hanford,* 75 Hun., 428; 27 N. Y. S., 672.

"A purchaser who does not fulfill the terms of his contract of purchase can maintain no action for breach of an implied warranty." *Reynolds v. Roberts,* 57 Vt., 392.

"In a case of a conditional sale an action for breach of warranty cannot be maintained in the absence of statute, until the price is paid and title has fully passed." *Shearer v. Kakoulis (Co.* Ct), 144 N. Y. S., 1077.

"It has been held that, where the title is reserved by the seller until the price is paid, the buyer cannot before payment maintain an action for breach of a warranty of quality contained in the contract." 24 R. C. L., 156.

"A conditional vendee cannot before title is vested in him, recover general damages for a breach of warranty." *Baca v. Fleming,* 25 N. M., 643; 187 P., 277; *Penser v. March Ass'n.* Ann. Cas., 1918-B, 914; *Levis v. Pope Co.,* 202 N. Y., 402; 95 N. E., 815; *Blair v. Johnson,* 111 Tenn., 111; 76 S. W., 912; *Dearing v. Thompson,* 156 Mich., 365; 120 N. W., 801; 24 L. R. A. (N. S.), 748; *Moneyweight v. Davis,* 180 Mich., 8; 146 N. W., 391; *People's Co. v. Me-Keen,* 214 F., 73; 130 C. C. A., 513; *Singer v. Smith,* 40 S. C., 529; 19 S. E., 132; 42 Am. St. Rep., 897.

As the plaintiff never had the title to the piano, her only remedy was a rescission of the contract of sale and a return of what she had paid on the purchase price. Manifestly under the circumstances of this case she could not maintain an action for rescission, having sold the piano and placed it beyond her power to return to the seller. *Ebner v. Haverty,* 128 S. C., 151; 122 S. E., 578. It is not questioned that in a case of ordinary sale, where the title has passed to the buyer, the fact that he has sold the property, or the fact that he still owes notes for the purchase price, will not affect his right to sue upon the breach of either an express or an implied warranty. *Williamson v. Paxville,* 102 S. C., 295; 87 S. E., 69; *Kirven v. Chem. Co.,* 77 S. C., 493; 58 S. E., 424 (in opinion of Justice Wood); *Wiggins v. Hunter,* Harp 80; *Parker v. Pringle,* 2 Strob. 242; *Carter v. Walker,* 2 Rich., 40; *Mauldin v. Milford,* 127 S. C., 508; 121 S. E., 547; *Ellison v. Johnson,* 74 S. C., 202; 54 S. E., 202; 5 L. R. A. (N. S.), 1151.

The judgment of this Court should be that the judgment of the circuit Court be reversed, and that the case be remanded to that Court for judgment of nonsuit under Rule 27.